RANDOLPH v. NICHOL.

Opinion delivered January 28, 1905.

74   93
77   382

74   93
f86   612

1. PARTIES—SUIT TO WIND UP JOINT STOCK COMPANY.—In a suit to wind up the affairs of a joint stock company and dispose of and distribute its assets among its stockholders, every person interested, either as stockholder or creditor of the concern, is a proper party defendant. (Page 101.)

2. CODE—RELIEF.—Under the Code, all forms of action are abolished, and relief is granted according to the facts alleged and proved, without regard to the form or denomination of the pleadings. (Page 101.)

3. DECREE—CONCLUSIVENESS.—Questions expressly reserved by a decree are not concluded thereby. (Page 101.)

4. STATUTE OF LIMITATIONS—LIS PENDENS.—Where shareholders in a joint stock company purchased property of the company under judicial sale, subject to a lien for any additional sum to settle the equities between the various shareholders, as to which questions the decree was held open, the statute of limitations did not, while the cause was pending, begin to run against such lien in favor of the shareholders or their subvendees. (Page 102.)

5. TAX SALE—WHO MAY NOT PURCHASE.—One who holds land subject to a lien, and whose duty it is to pay the taxes thereon, cannot escape the enforcement of the lien thereon by permitting the land to forfeit for taxes and procuring it to be bought in by an agent for his benefit. (Page 103.)

6. SAME—RIGHT OF PARTY TO PURCHASE.—The mere fact that one was party to a certain suit did not debar him from purchasing land in controversy therein at tax sale, if he owed no duty with respect either to the land or to the other parties to the suit. (Page 103.)

7. JOINT STOCK COMPANY—CONTRIBUTION AMONG SHAREHOLDERS.—Where, on winding up a joint stock company, it appeared that certain shareholders were permitted to buy lands of the company by surrender of their stock, subject to a lien for such further sums as the court might assess against them in adjusting the equities between all the shareholders, it was not error to require such purchasing shareholders to contribute according to the actual value of the lands, and not according to the par value of the shares, if the latter were greatly depreciated at the time of the purchases. (Page 103.)

Appeal from Crittenden Chancery Court.

EDWARD D. ROBERTSON, Chancellor.

Modified in part.

STATEMENT BY THE COURT.

On September 1, 1844, various owners of lands in Critten-den County, Arkansas, and Shelby County, Tennessee, formu-lated a joint scheme for the disposition of their lands by the organization of a voluntary association (unincorporated), called the Memphis & Hopefield Real Estate Stock Association, and pursuant to said plan they conveyed said lands to John S. Clay-brook and Seth Wheatly, as trustees, who issued stock in said association to the several owners of the lands in proportion to the values of the tracts so conveyed by them. The lands so conveyed to the trustees were to be sold by them for the benefit of the stockholders, and the deed of conveyance further provided that "at any sale of the land and lots herein conveyed the said trustees may receive the stock issued as aforesaid at its par value in pay-ment of purchases."

Under this instrument lands were sold by the trustees from time to time, some sales being for money and many being made for stock in the association. The stock received in payment of sales was always cancelled. Dividends were declared of the money received for sale, which were credited on the outstanding stock certificates.

It appears that 90 per cent. of the face value of all outstand-ing stock had been paid to all stockholders before the suit was commenced.

On September 13, 1882, George W. Harrison and Horace W. Ferguson, stockholders in the Memphis & Hopefield Real Estate Stock Association, filed a bill in chancery in the circuit court of Crittenden County, Arkansas, against Willoughby Williams and John S. Claybrook, who were then trustees of said association, and others. The object of this bill was to wind up the said association, and dispose of its assets for the benefit of the stockholders therein.

Willoughby Williams, who died after the commencement of this suit, but before answer, owned $40,000 of stock in the association. He left a will, which was probated in Davidson County, Tennessee, where he lived, and in Jefferson County, Arkansas, whereby he bequeathed this stock to his children, $10,000 to his daughter, Nannie W. Nichol, to be held by his son, John H. Williams, as trustee for her.

John H. Williams and M. H. Williams were appointed executors by the will. Willoughby Williams died soon after the filing of the bill in the cause, and his executors filed an answer thereto, in which they claimed title to all the stock disposed of by the will.

On April 26, 1883, a decree was rendered for the closing of the trust, and the cause was referred to a master to ascertain and report the description and value of the undisposed of property, and the amount of outstanding stock and names of the holders thereof. After report of the master, the court on January 20, 1886, made an order, based upon the report of the master, for the sale of the undisposed of land of the association, to the end that the proceeds thereof might be divided and distributed among the holders of the stock of said association, according to their respective rights, as the same existed and might be declared and decreed by the court in this suit. The order directed that the commissioner should "receive the stock issued under the provisions of said deed at its par value in payment of any purchase that may be made of the land sold, should any stock be tendered;" and further provided that the court should thereafter "determine who are the stockholders entitled to participate in the distribution of the proceeds of the sales which may be made herein, and the proportion in which the person or persons so entitled shall share the same, and such question is for the time reserved." The decree also contained the following provision: "Nothing in this decree shall be so construed as to prejudice or in any manner affect the questions not herein disposed of, or the rights of any of the parties to this suit not herein or heretofore expressly adjudicated; but all such questions and rights are hereby reserved."

On July 18, 1887, the commissioners filed their report, showing sales of the lands made by them pursuant to the order of court, from which report it appears that they had made sales to

the extent of $41,651.91 in price, about all of which was paid for in stock of the association.

Among these purchasers was C. W. Frazer, trustee, who held the Willoughby Williams stock, $40,000, as the representative of the executors, and who purchased land at the aggregate price of $18,894.30, and paid stock therefor, purchasing for the other owners of this lot of stock, exclusive of said Nannie W. Nichol, who had declined to permit any of her portion of the stock to be used for that purpose. The court, by decree entered July 18, 1887, confirmed these sales with a qualification in the following terms: "If it becomes necessary, under the final decrees entered herein, to raise additional amount of cash in order to pay off the costs, expenses, debts and liabilities aforesaid, and to settle the equities between the various stockholders in said association, if any there be, said purchasers who have paid for their said purchases in stock will be required each to pay in money his proper proportion of said additional sum which it may be necessary to raise for the purpose aforesaid. And a lien is now retained on each tract of said land, respectively, to secure such additional sums of money as the purchasers thereof may be hereafter required to pay;" and the commissioners were directed to execute deeds to the several purchasers with the foregoing provision incorporated therein, reserving such claim for contribution, which was done.

Later, during the progress of the cause, the remainder of the lands unsold, and also some of the lands previously purchased by Claybrook, one of the trustees, were sold under order of the court containing the same stipulations with reference to payment therefor in stock; and on September 28, 1900, these sales were confirmed by the court with the same stipulation as above, requiring the purchasers to contribute, when called upon, and declaring a lien upon the lands sold for such contribution.

On January 28, 1891, Nannie W. Nichol and M. W. Taggart, who had been substituted as trustee for her under the will of her father, Willoughby Williams, first appeared as parties to the suit, filing a petition setting up a claim to the stock in the sum of $10,000, included in the $40,000 bequeathed by the will. The petition showed that no property had been bought by or for Mrs. Nichol in the cause, and claimed that she, through her trustee, Taggart, was entitled to her *pro rata* share of all assets

of the association that have been or might be realized in the cause. Petitioners prayed to be made parties to the cause, and that they might have the relief to which they were entitled as stockholders, and they offered to perform all such terms and conditions as to payment of or liability for costs as the court might require.

This petition does not appear to have been formally passed upon by the court, further than to sustain the exceptions of those parties to a report of master in 1892, fixing the value of the stock of the association.

On November 22, 1894, appellees, as heirs, and M. W. Taggart, as administrator of Nannie W. Nichol, filed an answer in the cause in opposition to the allowance of fees of a solicitor; and on September 19, 1900, appellees, as owners of the $10,000 stock formerly claimed by Nannie W. Nichol, filed exceptions to the report of the commissioner who had made the last sales. The exceptions claimed that all assets of the association had been exhausted, and that the small balance in the hands of the commissioner would be absorbed in the payment of costs, leaving nothing wherewith to pay non-purchasing stockholders their *pro rata* of the proceeds of sales of the property of the association.

On September 28, 1900, a decree was rendered in said cause which overruled the exceptions of appellees to the report of the commissioner, which showed the sales of the Claybrook lands, and confirmed such report. The decree directed the commissioner to execute deeds to said purchasers, and to present such deeds to the court for examination and approval. This decree says: "If it becomes necessary, under the final decree to be entered herein, to raise any additional amount of cash in order to pay off the costs, expenses, debts and liabilities which have been or may be established against the Memphis & Hopefield Stock Association, and to adjust the rights and equities of all parties, and to settle the equities between the various stockholders and the said association, if any such there be, and to satisfy the rights of non-purchasing stockholders, then the purchasers named above who have paid for their purchases in the stock as appears herein will be required each to pay in money his proper proportion of such additional sums; and a lien is now retained on each tract of said land, respectively, to secure such additional sums of money as the purchaser or purchasers thereof may hereafter be required to pay

—4

for the purpose as aforesaid, and the said deeds, respectively, shall reserve a lien to secure the payment of any sums of money which the court may hereafter in this cause direct the said purchasers, respectively, to pay."

The compensation of such commissioner, as charged in said report, was allowed, and he was directed to retain the same and pay any unpaid costs of the cause. If any balance remained, the commissioner was to pay it over to the clerk of the court, to be disposed of by it thereafter in the suit. The decree further directed that said Humphreys, as commissioner, should cancel all the certificates of stock in the Memphis & Hopefield Real Estate Stock Association which he had received in payment for land sold, but to preserve and not destroy them. The decree adds: "This cause will be retained on the docket for further proceedings."

On the same day appellees presented their motion for leave to file a cross complaint against all parties who had made purchases with stock, and against subpurchasers, to the end that such purchasers should be compelled to contribute their *pro rata* share of money necessary to equalize the parties making such motion and other nonpurchasing stockholders in the distribution of the assets of the association.

On the same day the court granted said motion of appellees by an order entered in the following words:

"This cause was heard this day on the motions of defendants, William Nichol, Jo Nichol and Currin Nichol, filed September 19, 1900, for leave to file their cross complaint against all the parties who have purchased land of the Memphis & Hopefield Real Estate Stock Association at sales made under decrees in this cause, and paid for same in stock of the association, and against all parties holding said lands under conveyance from such purchasers, and, such motion being understood by the court, it is ordered that the said defendants have 60 days in which to file such cross complaints."

. The cross complaint was filed by appellees on November 27, 1900, against the appellants herein, some of whom were purchasers at the sales by the commissioners and the other heirs or subsequent purchasers from the original purchasers at the commissioner's sale. They claimed ownership of the $10,000

stock in the association, set forth all the prior proceedings in the cause with reference to sales of lands and reservations of liens for contribution by the purchasers, and prayed for enforcement of such liens for contribution from the purchasers. Appellants were summoned to answer the cross complaint, and filed their answer thereto, in which they denied that appellees were the owners of any stock in the association, and denied the existence of any lien on the land and various other matters which will be sufficiently mentioned in the opinion. They also interposed a plea of the statute of limitation and a plea of laches.

The court rendered a decree in the cause, finding that appellees were the owners of the $10,000 stock, and entitled to contribution *pro rata* from the other stockholders who had purchased lands and paid for same in stock, and a reference was made to a master to take proof and report the value of the land and assets of the association on the date of the sale of the land in 1887.

After receiving the report of the master, a final decree was rendered, from which all the parties have appealed.

The decree held that the outstanding stock of the Memphis & Hopefield Real Estate Stock Association was $61,721.50, and that its value on June 14 and 15, 1887, was 33.08 cents on the dollar; that appellees owned $10,000 stock of the Memphis & Hopefield Real Estate Stock Association, and that the value of the same was $3,308, from which should be deducted $230.85, the same representing one-fourth of the $923.39 unsatisfied balance of judgment held by the Memphis & Hopefield Real Estate Stock Association against John S. Claybrook and Willoughby Williams, as trustees of the said association. The claim of the appellee was fixed at $3,077.15. The decree fixed the value of the assets of the Memphis & Hopefield Real Estate Stock Association at $20,417.96, which amount, the decree says, "makes the stock worth 33.08 cents on the dollar." The decree held that "each of the stockholders who purchased lands and paid for the same in stock of the association at the sales made on June 14 and 15, 1887, and February 13, 1900," would be required to contribute towards the payment of the $3,077.15 "in the proportion that the amount of stock used by them in such purchases, computed at 33.08 cents on the dollar, bears

to the sum of $20,417.96, which is fixed as the value of the assets of the association, and which makes the stock worth 33.08 cents on the dollar."

On this basis the several amounts due from the purchasers were adjudged, and a lien therefor was declared.

*W. M. Randolph, George Randolph, Wassell Randolph* and *R. M. Heath,* for appellants.

The court had no jurisdiction under the cross complaint of appellees, and its decrees are void. 42 Ark. 126; 39 Ark. 254; 49 Ark. 443; 29 Ark. 47; 33 Ark. 31; 48 Ark. 151; 17 How. (U. S.) 130, 591; 14 Ark. 246; Story. Eq. Pl. § 389; 30 Ark. 269; 31 Ark. 358; 115 U. S. 143; 86 Ky. 381; 90 Ky. 540; 36 Ark. 592. The suit of Harrison *v.* Willoughby finally ended by the decrees at the September term, 1900, and the decree was *res judicata* as to everything involved in it. 1 Black, Judg. § § 41, 154; 52 Ark. 224; 108 U. S. 24; 70 Ala. 567; 2 Ark. 66; 12 Ark. 95; 14 Ark. 244; 33 Ark. 454; 64 Ark. 477; 104 U. S. 410; 52 Ark. 142; Freeman, Void Sales, § 7; 10 Wall. 299; 148 U. S. 228; 23 Ark. 603; 53 Ark. 110; 107 Fed. 52. A purchaser during pendency of the suit is bound by the decree rendered. 16 Ark. 168; 93 U. S. 163; 131 U. S. 352; 94 U. S. 741; 103 U. S. 66; 4 Wall. 657; 109 U. S. 162; 12 Heisk. 306; 12 Lea, 215; 50 Ark. 458; 121 U. S. 28, 66. Appellants were released from contribution by sale of land to Organ in February, 1900. 1 Brandt, Sur. & Guar. § 146; 2 *Id.* § 434; 16 Ark. 331; 24 Ark. 540; 44 Ark. 349; Baylies, Sur. & Guar. 231, 237, 368, 428, 457, 486, 490. The cross complainants should have enforced their claim against the Claybrook land. 14 Ark. 86; 32 Ark. 478; 38 Ark. 167; 48 Ark. 230; 55 Ark. 450; 56 Ark. 139. The subvendees are entitled to the defense of the statute of limitations. Sand. & H. Dig. § § 2734-6; 51 Ark. 237, 267; 67 Ark. 84; 31 Ark. 494; 56 Ark. 391; 69 Ark. 104. The deeds to Reed & Organ have not been attacked, and are valid. 21 Ark. 370; 12 Ark. 822; 21 Ark. 582; 24 Ark. 459; 30 Ark. 730; 59 Ark. 195. The title of Edward Randolph was sufficient. 56 Ark. 192; 10 Watts, 354; 29 Pa. St. 139; 50 Ia. 192; 28 Wis. 312; 15 Ark. 341; 17 Ark. 546; 2 Heisk. 288. The claim of William, Joe and Currin Nichol is barred by the statute of limitations. 46 Ark. 25; 58 Ark. 84;

43 Ark. 464; 47 Ark. 317; 49 Ark. 468; 53 Fed. 872; 88 Tenn. 578; 53 Ark. 418; 71 S. W. 255; 53 Ark. 358; 100 U. S. 564; 8 Humph. 563; 6 Lea, 678; 102 U. S. 647. The claim set up in the cross complaint is barred by laches. 56 Ark. 633; 37 Ark. 155; 114 Fed. 801; 135 U. S. 460; 178 U. S. 205; 148 U. S. 360; 17 Wall. 521; 88 Fed. 428.

*Hunsdon Carey,* for appellees.

The affidavit for warning order was sufficient. Sand. & H. Dig. § 2975; 2 Har. & J. 191; 1 Pa. 218. There was no final decree in the case of *Harrison* v. *Williams,* 12 Ark. 397; 10 Ark. 334; 25 Ark. 420. The Nichol cross complaint was properly filed, and the court had jurisdiction. Sand. & H. Dig. § 5712. The statute of limitations does not apply. 6 Lea, 391; 4 Bax. 574; 4 Lea, 469. Laches can not be imputed to appellees. 151 U. S. 416; 19 Fed. 609. Cross-appellants were not required to give bond. Sand. & H. Dig. § § 781, 1026.

McCULLOCH, J., (after stating the facts.) It was the purpose of the active litigants in this suit, of which the so-called cross complaint of appellees and the proceedings had thereunder formed a part, to wind up the affairs of the joint association, and dispose of its assets, and distribute the same among the holders of the stock. The court so treated the suit, and every step taken throughout its lengthy course tended in that direction. Every person interested as owner of stock or creditor of the concern was a proper party, and should have been admitted to assert any rights. Appellees were therefore proper parties to the suit for the purpose of asserting their claim as owners of stock and to share in the distribution of assets.

It was perhaps a misnomer to denominate their plea a cross complaint, as it does not fall strictly within that term as fixed by the statute. But under our code of practice all forms of action are abolished, and relief is granted according to the facts alleged and proved, without regard to the form or denomination of the plea. Therefore, the contention of appellants that the relief must be denied because the facts set forth do not properly constitute appellees cross complainants in the suit is untenable.

Equally groundless is their contention that the decree at the September term, 1900, was a final adjudication of the rights of all parties, and that further relief should be denied. This is true as to all matters adjudicated by the court, but the court expressly pretermitted any decision concerning the rights of parties in the distribution of the assets of the association between the shareholders, and reserved that matter to be disposed of later. In furtherance of that course, the court allowed the purchasing shareholders to enjoy, tentatively, the fruits of the litigation to the extent of crediting their stock upon the purchase price of lands, but upon the express condition that they could be called upon at any time to pay such portion as should be found necessary to adjust the equities between all the shareholders, and a lien was declared for that purpose on the lands. In every step of the proceeding the court thus retained its hold upon the assets of the association, and protected in that way the rights of the nonpurchasing stockholders. It requires no citation of authority to sustain a court of equity in that course.

When the plea of appellees was filed, they were already parties to the suit, and had appeared as such, and were so treated for several years, though no formal order had been entered making them such; and the cause was still pending for the purpose of distributing the assets among the stockholders.

The conclusion reached that the cause was still pending for the purpose of adjusting the equities between the stockholders disposes of the plea of limitations and laches interposed by appellants. So long as the cause was pending, the statute did not begin to run against the lien reserved in the deed; and, the purchasing stockholders being parties to the suit, it was equally incumbent upon them to press the suit to final determination of all rights, and they can not be heard to complain of other stockholders for delay in that respect. Ex parte *Spence,* 6 Lea, 391; *Halstead* v. *Grinnan,* 152 U. S. 416.

The same rule must prevail as to subvendees, as they took the land subject to the lien thereon and the right of the non-purchasing stockholders to call for contribution. No definite time was fixed when the contribution might be enforced, and there was, therefore, no period from which the statute of limitation would run.

The chancellor found that the purchases at tax sale by Read and at levee tax sale by Randolph were, in fact, for the parties who had purchased in this suit, and whose duty it was to pay the taxes, and were therefore void. We think the proof sustained that finding, and the same will not be disturbed.

The chancellor also set aside the purchase by Organ at tax sale, for the reason that he was a party to the suit. This was erroneous. Organ was under no obligation to pay the taxes, and no relation of trust existed between him and the appellees or other stockholders. He was a stranger, so far as concerned the lands bought at tax sale, and enjoyed the same privilege as any other stranger to buy at the tax sale. The fact that he was a party to the suit did not curtail that privilege, and imposed no duty upon him concerning the lands or the other parties to the suit.

The appellees, Nichol and others, by their cross appeal question the ruling of the chancellor in ascertaining from proof the actual value of the lands at the time of the sale and requiring the purchaser to contribute only according to that value, instead of according to the par value of the stock paid in such sales. It was shown that the stock was greatly depreciated in value at the time of the purchases, being worth 33.08 per cent., as found by the chancellor, and it would have been unfair and inequitable to fix the liability of the purchasers to contribution on a basis of the par value of the stock. The basis of settlement adopted was, under the circumstances, the only fair one, and just to all parties.

The decree is modified so as to exclude from the enforcement of the lien the lands bought by C. H. Organ at tax sale, and described in the pleadings as part of the northeast quarter section 12, township 6 north, range 9 east, 55.40 acres, and north half of northwest quarter section 13, township 6 north, range 9 east, 80 acres; and in all other respects the decree is affirmed.

WOOD, J., not participating.