THE FEDERAL LAND BANK OF ST. LOUIS *v.* TREECE.

4-5805 138 S. W. 2d 90

Opinion delivered March 4, 1940.

*L. F. Reeder,* for appellant.

*C. D. Atkinson* and *Chas. W. Atkinson,* for appellee.

SMITH, J. Through a foreclosure proceeding appellant, Land Bank, acquired a farm of seventy-nine acres which had been mortgaged to it by H. A. Piercy. A contract for the sale of the farm, after the foreclosure, was negotiated by J. F. Backstrom, the "field man" representing the bank, with appellee Treece. Backstrom advised Treece that an offer of $2,000 would be considered if accompanied by a payment in cash of $500. In March, 1932, that offer was made, and Treece was advised that it had been accepted, and that the bank would prepare a deed to Treece and mortgage to be executed by him for the $1,500 balance of purchase money.

On April 1st or 2d Treece moved out to the farm, and found Piercy still in possession, but preparing to vacate. Piercy had disconnected a Delco plant and pump and certain other fixtures. Backstrom advised Treece that these fixture were all included in the sale to Treece and should be delivered to him. A voluminous correspondence occurred between Treece and the bank and its representatives in which Treece demanded the return of the fixtures. Twenty-five letters were written by Treece and twenty-eight others were received by him, all of which were offered in evidence.

The bank brought suit in its name and in that of Treece to recover these fixtures. This suit was not heard until May 27, 1933, which was more than a year after Treece had taken possession of the land. A judgment was rendered in favor of the plaintiffs for the possession of the Delco light and water system, the latter consisting of an engine, generator, pumps, and compressor tank. These were all the fixtures in controversy between the parties to this litigation except a kitchen sink, which was adjudged in the replevin suit to be of the value of $10, and a hay fork, hay pulley and carrier, of the adjudged value of $30, so that all the fixtures claimed to have been bought by Treece were ordered to be returned to him except those last men-

tioned of the total value of $40. The testimony of Backstrom, corroborating that of Treece, makes the fact certain that all these fixtures were shown and sold to Treece by the bank.

All of the fixtures recovered in the replevin suit were delivered to Treece by Piercy except the "water system consisting of engine, generator, and compressor tank," and Treece continued to insist that these be returned, but the bank advised Treece that it ". . . feels that it can go no further in assisting you to recover." Thereafter, on May 7, 1935, a deed was delivered to Treece by the bank, and the mortgage was executed by him to the bank for the unpaid purchase money.

The mortgage required Treece to insure the residence on the farm for the benefit of the bank, and authorized the bank to pay the taxes if Treece failed to do so, and to add the taxes so paid to the debt secured by the mortgage. The residence burned, and the insurance in the sum of $1,138.08, was applied on the debt. Other payments were made until the debt, exclusive of taxes and insurance paid, was reduced to $193.88, according to the bank; according to Treece's contention it had been reduced to $67.70. The court made no specific finding as to which contention was correct.

Treece allowed his payments to fall in arrear, and made written application for an extension of time, signed by himself and his wife, which recited that "We agree that any extension granted shall not impair the debt due The Federal Land Bank of St. Louis under said loan or the lien of its mortgage on the lands embraced in said loan. We further agree to pay said delinquencies within the time provided in any extension granted, and we agree to pay the balance of the mortgage debt as it matures." The date of this application was May 24, 1937.

Further default in payment was made, and this suit was brought to foreclose the mortgage executed to secure the unpaid purchase money. An answer was filed asking credit for the value of the fixtures not delivered. Testi-

mony was offered to the effect that the value of the farm was from $350 to $500 less without these fixtures than it was with them. The court made no finding as to the value of any of the fixtures, but made the general finding ". . . that the defendants have suffered damages because of the failure of plaintiff to deliver possession of said real estate as contracted and sold to defendants in an amount sufficient to offset the balance due upon the promissory note aforesaid together with taxes for the years 1935, 1936, and 1937 and any and all other sums claimed by plaintiff except the sum of $18.10 taxes for 1938 paid by plaintiff, and that such damages should be offset against the claim of plaintiff; that upon payment of said sum of $18.10 to the clerk of this court for the plaintiff, the defendants will be entitled to cancellation and satisfaction of record of said mortgage and the possession of the abstract of title to said premises now held by plaintiff."

The effect of this decree was to find that a balance of only $18.10 was due on the mortgage, and upon that sum being paid to the clerk of the court the mortgage was canceled and declared to have been paid, and this appeal is from that decree.

It is first insisted that inasmuch as the deed was not delivered until three years after the fixtures had been removed and the controversy about them had arisen, Treece is now estopped to raise the question. In support of that contention numerous cases are cited holding that antecedent correspondence and prior writings, as well as oral statements and representations, are merged in a subsequent written contract when it is free from ambiguity and is complete.

This is ordinarily true, but is not true in the instant case, for the following reasons. The deed to Treece conveyed the land and all appurtenances thereunto belonging. Backstrom testified that ordinarily such trades as he made with Treece are closed when the buyer makes a payment, even though the deed is not delivered. He admitted telling Treece that the fixtures were included in the trade and went with the land, and that he at-

tempted to convince Piercy that the fixtures had been sold to Treece and went with the farm. Treece was put in possession of the farm before the delivery of the deed, and he had made a cash payment of $500. Not only was there no offer to return the cash payment, but it was all along conceded that the bank had sold Treece property which had not been delivered, and the bank brought and conducted at its own expense a suit to recover the fixtures, and a judgment for their recovery was secured except a part of the fixtures of the value of $40.

Here, there was no attempt to vary the deed. It was shown only what the appurtenances were, which, admittedly, the deed conveyed, and this to show the extent to which the consideration had failed.

The case of *Held* v. *Mansur*, 181 Ark. 876, 28 S. W. 2d 704, was one in which a vendor sought to foreclose a mortgage given to secure unpaid purchase money. The suit was defended upon the ground that the vendee had been induced to purchase through fraudulent representations regarding the land. In such cases it was said that the purchaser might retain the property and sue for the damages sustained by reason of the false representations of the vendor as to the land, in which event the measure of the damages would be the difference between the real value of the property in its true condition and the price at which he purchased it; or, to avoid a circuity of actions, he might plead such damages in an action for the purchase money and have the same recouped against the sum he had paid for the land.

Here, there is no allegation of fraud, but it would be such in effect to require Treece to pay for something which had been sold to, but not delivered to him. No complaint is made as to the character or area of the land. The complaint is that fixtures were sold which were not delivered, and their value at the time and place of sale is the measure of damages, and reflects the diminution in the value of the land sued for.

We are also of the opinion that Treece did not waive his claims for these damages by his application

for an extension of time for payment. Both prior and subsequent to that event he demanded that these fixtures be returned to him or that he be given credit for their value, and his renewed promise to pay his debt will be construed to mean the balance owing by him when the fixtures had all been returned, or, if not returned, credit therefor had been given.

The judgment in the replevin suit, to which Treece was a party, fixed the value of the fixtures which were not ordered returned to Treece at $40, and he should have credit for that amount. All the other fixtures were returned to Treece except the water system, consisting of an engine, generator, pumps, and compressor tank, and he should have credit for their value.

It appears that when this suit was brought the taxes had not been paid on the land for the years 1935, 1936, 1937, and 1938, and the land had been sold for the 1935 taxes, and the time for redemption was about to expire, when a redemption was effected, and this was done by paying the taxes for which the land had sold and those which subsequently accrued. The mortgagee bank had the right to pay these taxes to protect its security even though the mortgage itself had not expressly granted that right, as it, in fact, did. The bank appears also to have paid insurance amounting to $5.10, which the mortgage authorized.

The decree of the court below will, therefore, be reversed, and the cause remanded, with directions to ascertain the unpaid balance due on the note secured by the mortgage, to which will be added the taxes and insurance paid, together with the interest. This sum will be credited with $40, the value of fixtures not recovered in the replevin suit, and will be further credited with the value of the water system at the time and place of sale, and judgment will be rendered for the difference, and the mortgage ordered foreclosed, if any balance is found to be due.

MEHAFFY, J., dissents.