DILL, TRUSTEE, *v.* SNODGRESS.

4-8521                                                   211 S. W. 2d 440

Opinion delivered May 24, 1948.

*Tilghman E. Dixon* and *Wm. J. Kirby,* for appellant.

*A. F. House,* for appellee.

GRIFFIN SMITH, Chief Justice. The controversy involves title to approximately seven and a half acres of unimproved land within the corporate limits of Little Rock.

In October 1923 the then owner, Ella Lurtey, contracted a sale to W. M. McNutt. Approximately nine years later McNutt assigned his contract to Fred A. Snodgress for a cash consideration of $300. At the time this assignment was made—June 9, 1924—McNutt and his wife, by deed, conveyed their equity to Snodgress, and

the deed was recorded. The Lurtey contract obligated the owner to execute a warranty deed to McNutt when $2,200 had been paid.

July 26, 1924, Snodgress deeded the property to Mark and Viola Owens, husband and wife, and this deed was recorded. Finding that they would be unable to discharge their obligations to Snodgress, the grantees reconveyed to him by deed of July 9, 1925. This instrument was not recorded. Thereafter Snodgress paid on the Lurtey obligation until total credits aggregated $1,759.36. Altogether, taxes included, he had paid $2,500.

Snodgress testified that Ella Lurtey left Little Rock without giving him a forwarding address, and that he did not know where she was. He owed three or four hundred dollars, but the debt was barred by limitation.

S. L. Dill is engaged in the real estate business, and testified that for a year or more he had been interested in the property and had tried to get in touch with the owner. Through his attorney, Tilghman Dixon, he succeeded in locating Viola Owens in California at Pasadena, (her husband having died). Mrs. Owens' California attorney—Morton H. Eddy—finally wrote that his client would execute a quitclaim deed for $100.

Dill says that in purchasing the property he was representing family interests, including his father, mother, a brother, and himself; hence it was sought to put the title in him as trustee. Dill admitted that before attempting to find Mrs. Owens he went to Snodgress' office and asked where Mrs. Owens could be found. Snodgress, according to Dill, told him that he (Snodgress) was the owner, Dill adding, "But according to the record I couldn't find where it was indicated. I also told [Snodgress] that if he could offer any evidence of ownership, I would make an attempt to trade with him; and that is as far as I would go." Dill's attorney asked, "Did you tell [Snodgress] that if he had a deed of any kind to produce it?" Answer: "I told him if he could show he was the owner I would be glad to try and work out a trade with him." Question: "And he did not, at any time, show you

a deed or any instrument of any kind?'' Answer: ''No, sir; I have never seen a deed from Mr. Snodgress yet myself.'' Later Dill testified he was told Snodgress had a deed from Owens.

Snodgress testified that he had practiced law in Little Rock for thirty-five years and was owner of the property in question. He identified the various documents to which reference has been made, and verified signatures. Dill called at his office at least three times to discuss buying the property, and mentioned the matter once or twice on the street. The witness said he told Dill there was a balance due Mrs. Lurtey; that she was dead, or her address was unknown. Dill's plan was to plat the property. He was shown a file disclosing delinquent tax obligations. In this file there were three deeds, including the one from Mark and Viola Owens that had not been recorded; and, said Snodgress, ''I showed [Dill] the deed and told him about the trouble I was having with Mrs. Lurtey.''

After Dill's conversation with Snodgress he met a son of Viola Owens, who was temporarily in North Little Rock. At this time the California address had not been ascertained, or, if it had been, Mrs. Owens was not willing to sell. This is shown by an Eddy-to-Dixon letter, in which Eddy said he had talked with a daughter of Mrs. Owens, '' . . . who told me her mother desired to do nothing. I, frankly, do not understand her attitude, but that is her present conclusion. I told the daughter she might as well sign the quitclaim deed and let you handle the rest.'' This letter was dated June 6, 1947, and refers to a communication from Dixon dated May 13th.

Appellee's counsel argues that something said to Mrs. Owens' son by Dill or those representing him must have been persuasive, and that the son communicated with his mother, for on June 24th Eddy telegraphed Dixon that Mrs. Owens had just informed him she would sell for $100. The deed, seemingly, had been prepared in Little Rock and forwarded to Pasadena. Dill caused it to be recorded July 1, 1947.

It will thus be seen that Dill as trustee claims under a quitclaim deed executed by one of two persons, and that ownership of the land, *prima facie,* was in Mark and Viola Owens, to whom Snodgress had conveyed by deed duly recorded; while upon the other hand Snodgress held a deed from Mark and Viola Owens, executed prior to Viola's quitclaim to Dill; but this deed had not been recorded.

Since occupancy by Snodgress was at one time actual, (a dilapidated house having been destroyed) the question is one of fact: Did evidence submitted by Snodgress preponderate in favor of his contention that Dill had actual notice of his interest? In *The Henry Wrape Co.* v. *Cox,* 122 Ark. 445, 183 S. W. 955, it was said that ''if the plaintiff took the quitclaim deed from its immediate grantor without notice of an outstanding conveyance or obligation respecting the property, or notice of facts which, if followed up, would have led to knowledge of such outstanding conveyance or equity, it was entitled to protection as a *bona fide* purchaser upon showing that the consideration stipulated had been paid, and that such consideration was a fair price for the claim or interest designated.''

While an unrecorded mortgage is not a lien on the property as against a stranger—*Sims* v. *Petree,* 206 Ark. 1023, 178 S. W. 2d 1016 (cited in *Primm* v. *Farrell-Cooper Lumber Co.,* 210 Ark. 699, 197 S. W. 2d 557)—and this is true although there may have been actual knowledge of the existence of the mortgage, the same rule does not protect one who, with notice that the record owner of property has conveyed it, procures from such owner a quitclaim deed; and this governs in the case at bar, where the price paid was only a twentieth of actual value. See *Skelly Oil Co.* v. *Johnson,* 209 Ark. 1107, at pages 1122-23; 194 S. W. 2d 425, at pages 432-33. We think the Chancellor did not misjudge the weight of evidence in holding that Dill had knowledge of the Snodgress deed. Certainly Dill had information from which knowledge could have been acquired, for the very person from whom he procured the quitclaim deed was one of the two who had formerly conveyed.

When Dill filed his complaint against Snodgress, Manie Schuman was named as a defendant tax title purchaser, he having in 1940 procured the Land Commissioner's deed for 1936 forfeiture. There is a stipulation that sale to the State was void because there was included in the sum demanded the so-called pension tax. *Adamson* v. *City of Little Rock,* 199 Ark. 435, 134 S. W. 2d 558. Schuman moved to dismiss on the ground that neither Dill nor his predecessors in title was owner of the land in 1936, and therefore each was without legal authority to question the sale. Schuman made the further claim that following his purchase in 1940 he paid taxes for seven consecutive years, and that his right to the property had accrued through adverse possession, under Pope's Digest, § 8920. In his brief Schuman says: "The decree [finding for Snodgress and against Dill and Schuman] should be reversed, and [the cause] remanded with directions to dismiss the suit as a whole, as we [have all] failed to show a present right to title."

Section 8920 of Pope's Digest deems unimproved and uninclosed land to be in the possession of one who under color of title has paid taxes, but the benefits created are available only to a person who himself or those under whom he claims "shall have paid such taxes for at least seven years in succession." The Act does not apply to lands fenced or in cultivation. In *Schmeltzer* v. *Scheid,* 203 Ark. 274, 157 S. W. 2d 193, it was held that § 8920 " . . . applies to urban as well as rural unoccupied, wild, or uninclosed land." Actual language of the statute is "unimproved *and* uninclosed land," not "unoccupied, wild, *or* uninclosed land." Whether the urban property contended for by Dill and Snodgress falls properly within the statutory intent, irrespective of the exact language used in construing it, is unimportant in view of Schuman's concession that he should not prevail. Although Schuman alleged the land was unimproved and uninclosed, Snodgress testified that it was fenced when he bought; that the two-room house had been destroyed, and that vandals took the fence. There is no proof that the fence was destroyed more than seven years prior to

the time suit was filed, hence nothing definite upon which to invoke § 8920.

Counsel for Schuman, in reviewing transactions showing the Lurtey-to-McNutt contract, the McNutt assignment to Snodgress, the McNutt warranty deed to Snodgress, the Snodgress deed to Mark and Viola Owens and their reconveyance to Snodgress, Viola Owens' quitclaim deed to Dill, trustee, and a quitclaim deed from the McNutts to Dill, trustee (July 14, 1947), argues that neither Dill nor Snodgress can question validity of the Land Commissioner's deed without showing that the owner or those through whom he claims had title to the property when it forfeited.

There is the further argument that Snodgress, "by his apparent abandonment, lost whatever right he formerly may have had," evidence of this status being failure to pay the admitted balance, and long delay in asserting title. In support our attention is called to *Hopper* v. *Chandler,* 183 Ark. 469, 36 S. W. 2d 398. We agree with counsel for appellee that language quoted in the Hopper case upon which Schuman relies is applicable only where the attack is upon a deed executed by the County Clerk. See *St. Louis Refrigerator & Wooden Gutter Co.* v. *Thornton,* 74 Ark. 383, 86 S. W. 852; *Stanton* v. *Moore,* 210 Ark. 416, 196 S. W. 2d 573; Pope's Digest, § 13874. Judge RIDDICK, in *Rhea* v. *McWilliams,* 73 Ark. 557, 84 S. W. 726, said that the statute was enacted for protection of parties holding under tax titles, and was intended to cure defects in such titles as against those having no interest in the land at the time of sale; nor does it apply in cases of conflicting tax titles. Schuman's deed, it should be remembered, was from the Land Commissioner.

It is our view that Snodgress had an interest in the property that entitled him to contest Schuman's tax title. Snodgress assumed obligations of the McNutt contract with Mrs. Lurtey, including the duty to pay taxes. One who by contract is required to pay taxes is by law entitled to redeem. There is no substantial denial of the statement by Snodgress that diligent effort was exerted to

locate the record owner, although appellee admits that during the "lean years" the contract was retained only, through courtesy of Willis Holmes and E. G. Shoffner, who represented Mrs. Lurtey.* While Snodgress spoke of the balance due on the contract and said it was barred by time, he could not compel Mrs. Lurtey (if alive, or her heirs, if she be dead) to execute a deed in evidence of the title while at the same time pleading limitation; nor does Snodgress' statement that the debt was barred necessarily mean that he would plead limitation. On the contrary he expressed a willingness to discharge the obligation.

The Chancellor correctly determined all issues. Affirmed.

---

* The briefs refer to Mrs. Lurtey as "Elta" and as "Ella."