MID-SOUTH INSURANCE COMPANY *v*. FIRST NATIONAL BANK OF FORT SMITH

5-4056                                              410 S. W. 2d 873

Opinion delivered February 6, 1967

H. *Clay Robinson,* for appellant.

*Daily* & *Woods,* for appellee.

LYLE BROWN, Justice. Summary judgment was awarded appellee, First National Bank of Fort Smith, against appellant, Mid-South Insurance Company. Mid-South appeals from the award, contending there were substantial issues of fact to be first decided. First National filed this suit against three corporations and one individual, one of the corporations being Mid-South. The instrument forming the basis of the litigation was a promissory note in the principal sum of $150,000.00. The note was executed by Handley Trading Company, Inc., and endorsed by National Automobile Insurance Underwriters of Arkansas, Inc. and Oscar E. Chambers. All of these parties, along with Mid-South, were the defendants. Service could not be obtained on Handley and National; and Chambers does not appeal from the summary judgment against him.

Mid-South was not an endorser on the note. First National contends that Mid-South, for valuable consideration received from National Automobile Insurance Underwriters, assumed the balance of the note, being $70,000.00. First National attached to its complaint photocopies of Mid-South's records, and of bank records in support of its contention that Mid-South had assumed the obligation and had in fact reduced the note to $45,-000.00. In its pleadings Mid-South denied it had ever contracted any obligation to First National, and further, that Mid-South could not legally assume the obligation on this note.

In challenging the summary judgment entered by the court below, Mid-South contends there is no proof that Mid-South ever contracted any obligation to the bank. The answer to this contention must be in the negative.

A photocopy of a record entitled *Minutes of a Special Meeting of the Board of Directors of Mid-South Insurance Company* was introduced. The item of business was the proposed repurchase by Mid-South of its agency agreement held by National Automobile Insurers, the consideration being the assumption by Mid-South of the balance of the involved note. The Board of Directors approved the purchase and directed its officers to execute the instruments necessary to complete the transaction. Thereafter, Mid-South made three payments on the principal and interest exceeding $25,000.00.

It is highly significant that Mid-South did not controvert, by affidavit or otherwise, the truthfulness of the statements contained in the minutes of the special meeting; nor did they dispute the signatures of the officers of the company contained thereon. The three substantial payments alleged to have been made were conceded.

The motion for summary judgment was controverted by filing an affidavit of a special auditor. On or near March 26, 1966, this auditor is alleged to have inspected the available records of Mid-South. He stated that he could find nothing pertaining to the aforementioned resolution, no record of the assumption of the bank note, and no record of the agency transfer. It should be noted that this auditor was retained to perform a special audit, in an effort to ascertain what occurred a year prior to that audit. It should also be noted that the control of Mid-South had in the interim changed hands three times. So what this auditor could not find a year later does not controvert written instruments unimpeachably establishing the transaction—all of which were previously relied on by the Insurance Commissioner and by the court in the rehabilitation proceedings, and served as a basis for the expenditure of over $25,000.00 by Mid-South in carrying out the agreement. Mid-South further certified the existence of the bank debt in the Contract for Rehabilitation of Mid-South Insurance Company, dated April 20, 1965.

To say that Mid-South never contracted any obligation to the bank may in the strictest sense be correct; yet they *assumed* an obligation owed the bank and made substantial performance thereon. Mid-South's board authorized the assumption of the note under date of March 1, 1965. From that time until July 1st, all payments made on the note were made by Mid-South. Such substantial payments made exclusively by Mid-South would indicate it had assumed the debt and caused the bank to forebear any proceedings against the original maker and endorsers. By the time the bank did take action, Handley and National could not be located for service.

Summarizing, the bank supported its Motion for Summary Judgment with the following documents:

1. The original note in the principal sum of $150,-000.00, showing that Mid-South had unquestionably made the last three payments thereon totaling $25,000.00 and accrued interest;

2. Call and Waiver of Special Meeting of the Board of Directors of Mid-South, signed by all the directors;

3. Minutes of Special Meeting of the Mid-South Board, wherein the board approved the assumption of the indebtedness owed First National Bank. The balance was agreed to be $70,000.00. This instrument bears the signatures of the president and secretary of Mid-South;

4. Contract for Rehabilitation of Mid-South Insurance Company, in which contract Mid-South listed its liabilities, one of which was this same bank note. This contract contained six signatures;

5. Petition of Harvey G. Combs, Insurance Commissioner, State of Arkansas, in a separate action in the same court, asking the circuit court to approve the plan of rehabilitation set forth in Item 4 above.

In the face of all these instruments, the execution of which was participated in by at least twelve different

persons, Mid-South filed a single instrument executed by the special auditor. In a pleading styled *Amended and Substituted Answer, Counter-Claim and Cross-Complaint*, Mid-South says it received no consideration for the alleged assumption of the obligation to the bank, but admits that it paid $20,000.00 on the note. Thus we see payments are admitted to have been made under some type of assumption of obligation, which action Mid-South defends on the ground of failure of consideration. The minutes of Mid-South's board meeting do in fact describe the consideration, the same being a reassignment of an agency agreement by National Automobile Insurers. Mid-South tendered nothing to support the allegation.

Thus it is clear that Mid-South offers nothing to substantiate its real defense except an unverified pleading. This does not meet the requirements of our summary judgment procedure.

In *Epps* v. *Remmel*, 237 Ark. 391, 373 S. W. 2d 141 (1963), this court approved the following statement from *United States* v. *Dollar*, 100 F. Supp. 881 (1951): "The motion [for summary judgment] requires the opposition to remove the shielding cloak of formal allegations and demonstrate a genuine issue as to a material fact."

In the face of documentary support for summary judgment, Mid-South would force the case to trial by merely contending that an issue exists, without any showing of evidence. This would defeat the whole purpose of summary judgment procedure.

One other point is relied on by Mid-South, namely, that the repurchase of an agency agreement would be classed as an investment and that it is not an eligible investment for an insurance company under Ark. Stat. Ann. § 66-2603 (Repl. 1966). Mid-South did not pursue this contention in the trial court. Nowhere is such an allegation set out in the pleadings, nor was it raised on

the motion for summary judgment. If such allegation as is now made were a defense it certainly should have been placed before the trial court, with appropriate proof, and that court given an opportunity to rule thereon.

Affirmed.