18

RAY DEAM ET AL *v*. O. L. PURYEAR & SONS, INC.

5-4413                                    423 S. W. 2d 554

Opinion delivered February 5, 1968

*Odell C. Corter* and *T. S. Lovett Jr.,* for appellants.

*Marion C. Gill* and *Gannaway & Darrow,* for appellee.

LYLE BROWN, Justice. The appellants here were plaintiffs below. Appellee was one of three defendants. The parties will be referred to as they appeared in the

trial court. As the result of a fatal accident Ray Deam and others brought this suit against O. L. Puryear & Sons, Inc., and two individuals. Puryear successfully moved for summary judgment and plaintiffs appeal.

One of the defendants, V. I. Clark Sr., had been engaged in the public hauling business in the Dumas-Grady-Dermott area for some fifteen years. He operated from two to three dump trucks and hauled sand and gravel. Another defendant, John Vanzandt, was operating one of Clark's trucks at the time of the accident. The other defendant, O. L. Puryear & Sons, Inc., with headquarters at Dumas, was engaged in the construction business and was a substantial user of sand and gravel. Puryear frequently placed orders with Clark for the delivery of those materials to job sites. Clark's truck, driven by Vanzandt, was involved in the fatal accident forming the basis of this suit. It is alleged that Vanzandt was then in the course of traveling to Puryear's job site with a load of sand.

Plaintiffs' theory of liability as against Puryear is based on the assertion that both Clark and Vanzandt were agents of Puryear and that they were acting within the scope of that agency at the time of the collision.

Puryear's motion for summary judgment was supported by the discovery depositions of Clark and Vanzandt and by four affidavits. We summarize the pertinent assertions found in that evidence.

In his sand and gravel trucking business Clark had in operation three dump-bed trucks. Vanzandt was one of three employees regularly used in the business. Extra help was utilized at odd times. Clark hauled for anyone who needed his services in the trade area. He named some five substantial firms for which he hauled. "There isn't many around there but what we haven't hauled some for." He charged by the cubic yard. He was not the exclusive hauler for any of the named firms, in-

cluding Puryear, Inc. A person or firm needing Clark's services ordinarily called him, giving him the yardage of sand or gravel, and stating the point of delivery, usually a job site or a stockpile. Clark gave the information to Vanzandt. The driver would proceed to Pine Bluff Sand and Gravel Company to pick up the materials and they were there charged to the user. If the point of destination was a job site, Vanzandt proceeded there and dumped the load in a particular place shown him by the contractor. On occasions a building contractor would desire delivery of part of a load in one place and the balance at another location. Vanzandt conformed.

Vanzandt had been a regular employee of Clark for over two years. Vanzandt was directed exclusively by Clark as to all details of pickup and delivery excepting the information from the contractor as to the specific point of delivery on the job site. There is no evidence that any contractor supervised or directed the process of unloading.

Our summarization is taken from the depositions of Clark and Vanzandt, together with affidavits of four others, all introduced by Puryear in support of the motion for summary judgment. Plaintiffs responded with two affidavits; however, the content of those responses referred to the single contention that at the time of the accident the load of sand was destined for Puryear's job site. There was evidence to the effect that the load was to be delivered to another party. We can place that contention at rest by assuming, for purposes of this opinion, that Vanzandt was on his way to defendant Puryear's job site at the time of the accident.

In considering a motion for summary judgment the trial court examines the pleadings, and any depositions, admissions, or affidavits, to determine if there is a genuine issue as to the material fact involved. Ark. Stat. Ann. § 29-211 (Repl. 1962). ". . .[T]he theory underlying a motion for summary judgment is the same as

that underlying a motion for a directed verdict." Hence the trial court views the evidence "in the light most favorable to the party resisting the motion, with all doubts and inferences being resolved against the moving party." *Russell* v. *City of Rogers*, 236 Ark. 713, 368 S. W. 2d 89 (1963). The opposition to the motion cannot always successfully take his stand on the content of his pleading alone. If the movant makes a case for summary judgment the opponent must come from behind "the shielding cloak of formal allegations and demonstrate a genuine issue." *Mid-South Insurance Co.* v. *First National Bank of Fort Smith*, 241 Ark. 935, 410 S. W. 2d 873 (1967).

The relationship between the truck owner, Clark, and Puryear, Inc., the building contractor, is so clear that it warrants little discussion. Clark was clearly an independent hauler of sand and gravel. He owned his own equipment and hauled for anyone desiring his services. He operated in the same manner as do hundreds of haulers in this State—local transfer companies, franchised independent haulers of numerous commodities both local and statewide. They all pick up commodities at the request of the owner and deliver those commodities to a location designated by the owner. They bill the owner according to a fixed tariff or by charges otherwise agreed upon. As does Clark, they serve the general public in their area.

In *Fordyce Lumber Company* v. *Wardlaw*, 206 Ark. 35, 176 S. W. 2d 241 (1943), we held that Fordyce was entitled to a directed verdict; that Wardlaw was an independent log hauler and not a servant of Fordyce Lumber Company. Wardlaw's business relations with the lumber company were very similar to those existing between Clark and Puryear. Additionally, Puryear's witnesses gave evidence to the effect that Clark was not in Puryear's employment.

Finally, we conclude that reasonable minds would never reach the conclusion that a master-servant rela-

tionship existed between Puryear, Inc., and Vanzandt. The right to control the manner in which work is performed is vital in determining the relationship between the parties. *Barr* v. *Matlock*, 222 Ark. 260, 258 S. W. 2d 540 (1953). Vanzandt was in the general employment of Clark. It was Clark who hired and paid Vanzandt, furnished the hauling equipment, gave him instructions to pick up loads, gave him the delivery destination, and no person other than Clark could discharge him from that employment. The only contact between Vanzandt and Puryear, Inc., was at a job site when the contractor would point out the particular place or places to dump the sand. Vanzandt had not arrived at the job site when the collision occurred; he was enroute. To hold that a deliveryman whose general employer directs him to unload the material where the recipient desires it placed— to say that such placement, standing alone, creates a new employer-employee relationship—would toll the end to a service that is so essential to countless numbers of daily recipients of every type of commodity. We say countless because that would encompass deliveries to homes, businesses, and industries.

Affirmed.