ROBERT H. BOOTH ET AL v. LARRY R. McCORD, TRUSTEE OF PEOPLES LOAN & INVESTMENT CO.

5-5303                                    455 S. W. 2d 868

Opinion delivered June 29, 1970

*Walter Niblock, Truman Smith & Bob Mayes,* for appellants.

*Ball & Gallman,* for appellee.

JOHN A. FOGLEMAN, Justice. This is an appeal from a summary judgment quieting the title of Larry R. McCord, as Trustee of Peoples Loan & Investment Company,[1] to certain lands in Washington County against appellants. Appellee cross-appealed from that part of the decree awarding judgment against appellee in favor of appellants B. B. and Lydia Booth for $828.50, the amount paid to the Commissioner of State Lands for deeds to the lands involved, after their forfeiture for nonpayment of the taxes for the year 1964. Appellee claimed title by virtue of a deed dated November 19, 1968, executed by a Commissioner of the Chancery Court of Washington County in an action brought by Peoples Loan & Investment Company in March 1966 to foreclose a mortgage conveying the lands to secure a loan made by the loan company to B. B. and Lydia Booth, then owners of the property. See *Peoples Loan & Investment Company* v. *Booth,* 245 Ark. 146, 431 S. W. 2d 472.

During the pendency of the action, the Clerk of Washington County certified the lands to the state land commissioner as forfeited. On May 9, 1968, appellants Robert H., Jeanette, Arnold D. and Mary Booth, the sons and daughters-in-law of B. B. and Lydia Booth, obtained deeds from the Commissioner of State Lands conveying the lands involved. These deeds were obtained prior to the foreclosure decree, which was entered on October 15, 1968.

---

[1]This action was instituted by the corporation, but appellee was substituted as plaintiff in the action in his capacity as Trustee for the corporation in bankruptcy after the motion for summary judgment and the response thereto had been filed.

Appellee's suit to quiet title was filed on November 22, 1968, seeking cancellation of the deeds from the Commissioner of State Lands as clouds on its title, quieting of its title and recovery of $5,000 damages for slander of title. Affidavit for warning order, stating that appellants were nonresidents of Arkansas, was filed on the same date. Warning order was issued on that date and duly published on November 27, December 4, 11 and 18, 1968. An attorney ad litem was appointed.

Appellee filed a request for admissions on December 4, 1968, which was mailed to appellants at their respective out-of-state addresses. No answer to these requests was filed within the indicated 10-day period for response.

On February 11, 1969, appellee filed its motion for summary judgment, relying upon the failure of appellants to respond to the request for admissions, and the affidavit of County Clerk Ruth E. Roberts. The clerk's affidavit stated: that the county collector filed the list of lands delinquent for nonpayment of taxes for the year 1964, on October 25, 1965, including the lands involved here; that notice of sale filed indicated that the date of sale was November 12, 1965; that certificate of publication filed January 10, 1966, disclosed that the notice was published November 19 and 26, 1965; that no sale was conducted and the certificate of sale was filed unexecuted; that the clerk's certificate, indicating that the lands were erroneously returned delinquent, forfeited and certified to the land commissioner because the land was recorded under an incorrect section number, was filed May 7, 1968. The motion was also accompanied by an affidavit of the vice-president of appellee setting out the manner of acquisition of title by appellee.

On February 24, 1969, appellants filed a response to the motion for summary judgment in which they stated that there were genuine fact issues and that ap-

pellee was not entitled to judgment as a matter of law. Appellants filed no opposing affidavits.

The court's decree contained findings that the tax forfeiture was void, for the following reasons: the delinquent list was not filed with the county clerk by October 18, 1965, as required by Ark. Stat. Ann. § 84-1101 (Repl. 1960); the delinquent list was not published between October 18 and November 8, 1965, as required by Ark. Stat. Ann. § 84-1103 (Repl. 1960); the delinquent lands were never offered for sale by the collector as required by Ark. Stat. Ann. § 84-1105 (Repl. 1960, now Supp. 1969); and the lands in Sections 10 and 11, T 13 N, R 32 W, were listed as being in Section 2. The court held the deeds issued by the Commissioner of State Lands void, quieted and confirmed title in appellee and awarded B. B. and Lydia Booth judgment for the amount of money paid to the land commissioner for the deeds.

Appellants assert that it was error for the chancery court to give consideration to the unanswered request for admissions, and that it was error for the court to enter a decree on appellants' motion for summary judgment. On cross-appeal appellee contends that the judgment in favor of appellants B. B. and Mary Booth was erroneously entered. Appellants respond that this judgment was properly rendered as a condition for the granting of relief to the owner against the holder of an invalid tax title.

Appellants' argument that the decree was erroneously entered on the motion for summary judgment is that there is a clear and definite question of fact as to whether the sons and daughters-in-law acted as the agents for, or at the direction of, B. B. and Lydia Booth in acquiring the deed from the land commissioner. They also argue there is no evidence that the parents had any interest in the acquisition of title or that there was any scheme, conspiracy or fraudulent action among appellants to acquire title to the lands and defeat appellee's title. We need not determine whether there was

a question of fact on this point, because the uncontroverted affidavits in support of appellee's motion for summary judgment clearly show that the tax forfeiture on which the tax deeds were based was invalid for the reasons stated in the decree. See *Ramsey* v. *Long-Bell Lumber Co.,* 195 Ark. 528, 112 S. W. 2d 951; *Berry* v. *Davidson,* 199 Ark. 276, 133 S. W. 2d 442; *Penrose* v. *Doherty,* 70 Ark. 256, 67 S. W. 398, and cases cited in those opinions. Cases relied upon by appellants, such as *Palmer* v. *Ozark Land Co.,* 74 Ark. 253, 85 S. W. 408, are not applicable. There was no decree confirming the tax sale here, as there was in *Palmer.*

It is well settled that, once a moving party establishes a prima facie case for relief by affidavits and other supporting documents, the adverse party must remove the shielding cloak of formal allegations in pleadings and demonstrate the existence of a genuine issue of material facts. Ark. Stat. Ann. § 29-211 (Supp. 1969); *Mid-South Ins. Co.* v. *First National Bank of Fort Smith,* 241 Ark. 935, 410 S. W. 2d 873; *Deam* v. *O. L. Puryear & Sons, Inc.,* 244 Ark. 18, 423 S. W. 2d 554. Mere allegations in a response to the motion are not sufficient, unless supported by showing facts admissible in evidence or otherwise showing how the respondent will support his contentions that issues of fact exist. Ark. Stat. Ann. § 29-211(e)(Supp. 1969). See 3 Federal Practice & Procedure, Barron & Holtzoff (Wright) Rules Edition, 146, et seq., § 1235; *Bruce Construction Corp.* v. *U. S.,* 242 F. 2d 873 (5th Cir. 1957); *Engl* v. *Aetna Life Ins. Co.,* 139 F. 2d 469 (2nd Cir. 1943); *McClellan* v. *Montana-Dakota Utilities Co.,* 104 F. Supp. 46 (D. C. Minn. 1952), aff'd, 204 F. 2d 166 (8th Cir. 1953), cert. denied, 346 U. S. 825, 74 S. Ct. 43, 98 L. Ed. 350 (1953).

Appellants also argue that the provisions of Ark. Stat. Ann. § 84-1313 (Repl. 1960) prevent the granting of summary judgment in this case. Even if it would otherwise have that effect, this statute does not apply when the tax deeds were made by the state land com-

missioner. *Dill* v. *Snodgress,* 213 Ark. 526, 211 S. W. 2d 440.

We are unable to say that appellee has relied on the weakness of appellants' title rather than on the strength of its own title as appellants urge. The source of appellee's title is not the subject of any controversy. Deraignment of title beyond a common source is not required. *Coulter* v. *O'Kelly,* 226 Ark. 836, 295 S. W. 2d 753. While one seeking to cancel a void tax deed must rely upon the strength of his own title, deraignment of a perfect title is not necessary under circumstances such as those existing here. *Fine* v. *Bucha,* 247 Ark. 1074, 449 S. W. 2d 406; *Davis* v. *Stonecipher,* 218 Ark. 962, 239 S. W. 2d 756. Appellants are not really in position to attack appellee's title in view of their special appearance and the requirement of deraignment of title is not jurisdictional.

On cross-appeal, appellee argues that B. B. and Lydia Booth were not entitled to judgment for the amounts paid to obtain the tax deeds, because they were obligated to pay the taxes in the first instance. In this respect we agree with appellee. A similar situation was treated by this court in *Adams* v. *Sims,* 177 Ark. 652, 9 S. W. 2d 329. J. F. and I. T. Sims and their wives were mortgagors, and Adams was trustee for the mortgagees. Foreclosure decrees were rendered on April 9, 1925, and the mortgagees purchased the lands at a foreclosure sale on July 27, 1925. In 1926, the wives obtained tax deeds for the lands forfeited for nonpayment of 1923 special road improvement tax. We said:

> Appellants contend that a duty rested upon the Messrs. Sims as owners and mortgagors to pay the taxes accruing against their respective homesteads after they mortgaged them to appellants, and that they and their wives were estopped to subsequently purchase and acquire the tax titles based upon forfeitures for the nonpayment of special improvement road tax for the year 1923, except as a re-

demption thereof from the forfeiture and sale. The special road improvement taxes accrued after the mortgages were executed by the Messrs. Sims and their wives to appellants, and forfeitures for the nonpayment thereof occurred prior to the foreclosure of same. It was clearly the duty of the Messrs. Sims to pay the road improvement taxes when same became due, and, failing to do so, it was their duty to redeem the lands from the sales. This court is committed to the doctrine that the mortgagor must pay the taxes upon the mortgaged property, and that for this reason he cannot allow said property to be sold for the nonpayment thereof and acquire title by purchase at the sale antagonistic to that of his mortgagee. His purchase at such a sale must be regarded and treated as a redemption of the mortgaged property from the forfeiture and tax sale. *Drake* v. *Sherburne,* 57 Ark. 563, 22 S. W. 430; *Randolph* v. *Nichol,* 74 Ark. 93, 84 S. W. 1037; *Wade* v. *Goza,* 99 Ark. 543, 139 S. W. 639. We do not think the foreclosure of a mortgage in the interim between the accrual of taxes and sale under the forfeiture should change the rule. If the foreclosure of the mortgage in the interim reversed the rule, a mortgagor would reap a benefit from his own wrong and neglect in failing to pay the taxes. It is true that a foreclosure decree and sale of mortgage lands extinguishes the relationship of mortgagor and mortgagee, but the cessation of such a relationship certainly cannot place the mortgagor in a position to take advantage of his own neglect and failure to pay taxes which were levied and which became payable before the mortgage foreclosure and sale of the mortgage property. It would be otherwise in tax sales for taxes which became payable after the mortgage foreclosure.

If appellee had paid the taxes, which were due long before the foreclosure, the payment would have become a part of the debt secured by the mortgage and appellee would have been entitled to reimbursement,

or judgment against the elder Booths for the increased amount. *Dalton* v. *Polster,* 200 Ark. 168, 138 S. W. 2d 64; *Bingham* v. *Zeno,* 228 Ark. 1039, 312 S. W. 2d 181; *Federal Land Bank of St. Louis* v. *Treece,* 199 Ark. 1168, 138 S. W. 2d 90. If the Booths had paid the taxes before forfeiture they would not have been entitled to recover the amount from appellee. If appellee had paid them, the amount of the judgment against the Booths would have been increased by that amount. Therefore, B. B. and Lydia Booth could not be entitled, either on equitable principles or by statute, to reimbursement by appellee. Arkansas Statutes Annotated § 84-1119 (Repl. 1960) cannot have any application, because any purchase by them was only a redemption, insofar as appellee is concerned.

A different result might be reached as to the remaining appellants, but they have not yet asserted any claim for reimbursement or a lien, either in the trial court or in this court. Appellants appeared specially and moved to quash the service in the trial court and responded to the motion for summary judgment with a reservation of their rights under the motion to quash. In the court's decree, there was incorporated the finding that the court had jurisdiction of the parties. We take this to mean that the motion to quash was overruled. Yet appellants do not now argue that the service was defective as constructive service. They simply urge that the court had no such jurisdiction at the time requests for admissions were made and when answers were called for. They state the question as being twofold: (1) Had there been a commencement of the action when the request for admissions was filed; and (2) if so, was there sufficient jurisdiction over the nonresident defendants when the requests were filed to subject them to statutory requirements under Ark. Stat. Ann. § 28-358(a) (Repl. 1962)? The court's decree shows that the request for admissions was considered.

The answer to appellants' first question is in the affirmative. An action on constructive service is com-

menced on the date the warning order is made, and not the date of the first publication, or the date when the defendant constructively summoned received notice from the attorney ad litem. *Johnson* v. *Foster,* 69 Ark. 617, 65 S W. 105; *Boynton* v. *Chicago Mill & Lumber Co.,* 84 Ark. 203, 105 S. W. 77; *Frank* v. *Frank,* 175 Ark. 285, 298 S. W. 1026; *Missouri Pacific R. Co.* v. *McLendon,* 185 Ark. 204, 46 S. W. 2d 626; *Burks* v. *Sims,* 230 Ark. 170, 321 S. W. 2d 767. See also Ark. Stat. Ann. § 27-357 (Repl. 1962).

As to the second question it is clear that the court had no jurisdiction to make any *final* order affecting the rights of non-resident defendants, until the warning order had been published for four weeks and 30 days had elapsed after the appointment of the attorney ad litem and his report had been filed. *Frank* v. *Frank,* supra. Yet, we pretermit any further discussion of this question as to the serving of requests for admissions, even though the chancery court found that only the question of damages remained to be determined on that portion of appellee's complaint alleging a cause of action. It is clear that no personal judgment could be entered against one constructively summoned who does not voluntarily submit to the jurisdiction of the court. *Gainsburg* v. *Dodge,* 193 Ark. 473, 101 S. W. 2d 178, *Meier* v. *Hart,* 143 Ark. 539, 220 S. W. 819; *Brookfield* v. *Boynton Land & Lumber Co.,* 127 Ark. 306, 192 S. W. 215; *Webster* v. *Daniel,* 47 Ark. 131, 14 S. W. 550. It is the settled policy of our law to permit a special appearance to question the sufficiency of the service of process. *United Equitable Insurance Company* v. *Karber,* 243 Ark. 631, 421 S. W. 2d 338. Further action in the case by one who moves to quash the service does not amount to an entry of appearance, or waiver of the objection to service, so long as the objection is maintained throughout the proceeding. *Cox Inv. Co.* v. *Major Stave Co.,* 128 Ark. 321, 194 S. W. 701. Where the reservation of rights as to the service is made throughout the proceedings in the trial court, the prosecution of an appeal from a judgment entered therein will not constitute an entry

of appearance. *Anheuser-Busch, Inc.* v. *Manion,* 193 Ark. 405, 100 S. W. 2d 672. Appellants reserved the question as to the sufficiency of the process in every pleading filed by them. No reason appears why the rules above set out should not govern in a proceeding in rem where the service is constructive. Consequently, it does not appear that the trial court has jurisdiction to render a judgment for damages against appellants, so the propriety of the request for admissions and the effect of the failure of appellants to answer them are not now before us.

The decree is affirmed on appeal but reversed on cross-appeal.

HARRIS, C. J., and BYRD, J., concur.