# TUCKER, *recr.*, *v.* YELL, *admr.*

ADMINISTRATION OF ESTATES—*classification of claims.* The classification of claims made by the administrator is subject to the supervision of the probate court. That court is the proper authority to ultimately order the classification of claims.

A claimant who files his demand with the probate clerk, subjects himself to the jurisdiction of the probate court, and is bound to take an appeal therefrom in due time.

FINAL DECREE. A decree requiring a defendant in a chancery suit to pay over money to the receiver appointed therein, is a *final decree,* and appealable.

The decree of this court, in *Crittenden, ex parte, 10 Ark., 333,* that "a final decree is one that makes an end of the case, and decides the whole matter in controversy, costs and all, leaving nothing further for the court to do," is *too broad* in its terms.

In peculiar cases, this court may decree as to certain defendants or property, while all the equities as to other defendants and property are reserved for further consideration; and yet *this decree,* as to certain defendants or property, may be final.

If, in the course of the proceedings, final decrees vital to the interests of any of the litigants are made, an *appeal* may be had.

*All judgments and decrees* obtained against the deceased, during his lifetime, and which were capable of being liens on real property of the deceased, if he had any, whether liens were actually secured by them or not, belong to the *third class* of claims against the estate.

WRIT OF CERTIORARI. Where the probate court improperly classifies a claim against an estate, and that error appears upon the face of the record, the writ of *certiorari* is the proper remedy.

Where the record shows that the claim was a *final decree,* and the claim was duly certified, verified and allowed, and it appeared that no laches had intervened to bar its just claim of lien, and that it had been classed in the fourth class, *error* does appear on the *face* of the record, and the court issuing the writ may *re-classify* the claim.

*Appeal from Jefferson Circuit Court.*

Hon. H. B. MORSE, Circuit Judge.

CLARK, WILLIAMS & MARTIN and WATKINS & ROSE, for appellant.

I. Under the circumstances of this case, *certiorari* was the proper remedy. *Couch, ex parte*, 14 *Ark.*, 337; *Lindsay, v. Lindley*, 20 *Ark.*, 581; *Denton v. Boyd*, 21 *Ark.*, 264.

II. The decree of the chancery court of Arkansas county was a final decree. *Gould's Digest, title Chancery, secs.* 125, 132, 134, 135, 146, 148.

It is not necessary that the entire cause should be finally disposed of before an appeal can be taken on a branch of it. *Nichol v. Dunn*, 25 *Ark.*, 129; *State v. Shall, admr.*, 23 *Ark.*, 601; *Trapnall, et al., v. Brownlee*, 8 *Ark.*, 207.

The finality of a decree is not suspended by a reference to a master. *Peay v. Bliss, in U. S. Ct. Ct., May T.*, 1869; *op. by Caldwell, J.; Barnard heirs v. Ashley*, 18 *How.*, 43; 2 *Danl. Chy.*, 1192; 1 *Rand.*, 421.

III. The statute of non-claim is the only rule as to claims not barred by the statute of limitations, at the decease of the debtor. *Walker v. Byers*, 14 *Ark.*, 246.

Under our system of administration, all decrees, &c., which are of the capacity to be liens on the realty of a deceased person, at the time of his death, constitute the third class of claims. *Gould's Digest, tit. Judgment and Decrees, secs.* 4 *and* 5; *Chancery, sec.* 134; *Administration, sec.* 99.

The law made it the duty of the administrator to class this claim. *Gould's Digest, tit. Administration, sec.* 112. It was so classed; and the action of the probate court, in displacing that allowance and classification, was illegal, and the proceeding should have been quashed in the circuit court.

BELL & CARLETON, for appellee.

There was no decree against Yell, either interlocutory or final; but the record shows an order *nisi* upon Yell, as an officer of the court, based upon an interlocutory application, *pendente lite.* 3 *Dan. Ch. Prac.*, 1780 *and* 1790.

The order against Yell determines no right, and establishes no interest in any parties litigant in the suit, to the money in Yell's hands. There is no feature of a final decree about it. *Keatts v. Rector*, 1 *Ark.*, 391; *Green v. Thomas*, 8 *Ark.*, 56; *Haynie v. McLemore*, 12 *Ark.*, 297; *Price v. Notrebe*, 17 *Ark.*, 58.

The writ of *certiorari* was not properly issued in this case, and the court, of its motion, at any stage of the proceedings, can quash it. *Randle v. Williams*, 18 *Ark.*, 380. A writ of *certiorari* will not lie to corrrect errors in the proceedings of an inferior court, which could have been corrected on appeal. *Alston, ex parte*, 17 *Ark.*, 580.

Judgments and decrees are only liens on lands situate in the county where they were rendered.

GREGG, J.

We find from the record, in this cause, that on the 28th day of April, 1868, the appellant presented his petition to the judge of the second judicial circuit, for an order to the clerk of the circuit court of Arkansas county, to issue a writ of *certiorari*, directed to the clerk of the probate court of said county, commanding him to certify the records and proceedings in the matter between the parties above mentioned, and send the same up for the inspection and consideration of the circuit court; and also, that a citation be issued and served upon the said Annie P. Yell, as such administratrix, requiring her to appear before said circuit court, at the October term next thereafter, to show cause, if any she could, why such judgment and proceedings should not be quashed. Whereupon the judge, in vacation, made such order. The writs issued in obedience to the order, and being served, the parties there appeared, and the record was presented to the circuit court.

It appears from the record, so certified up, that after the death of James Yell, in 1867, the appellant, as a receiver in chancery in the case of Thomas Fletcher, as the administrator

of the estate of Joseph W. Clay, deceased, complainant against Benjamin Twombly, and other defendants, *on bill*, and Benjamin Twombly, in his own right, and as administrator, &c., complainant, against James Yell, and others, defendants, on *supplemental bill* in the circuit court of Arkansas county, in chancery, presented his claim against the estate of James Yell, then deceased, for $11,900$\frac{20}{100}$, with interest at six per cent., from the 17th May, 1867, founded on a decree in the cause rendered on that day.

A duly certified copy of such decree was annexed to and made a part of the claim. The justness and non-payment of the claim was duly verified by the affidavit of the claimant, and said Benjamin Twombly, and was by the administratrix indorsed, " exhibited and allowed as a claim of the third class ;" but afterwards the probate court classed the same in the fourth class.

The order or decree of the Arkansas county chancery court is as follows:

"Thomas Fletcher, as the administrator of Joseph W. Clay, deceased, complainant, *v.* Benjamin Twombly, *et al.*, defendant; bill in chancery; and Benjamin Twombly, in his own right, and as administrator, &c., *v.* James Yell, *et al.*, defendant; on supplemental bill.

" And now, on this day, on consideration of the application of said Benjamin Twombly, filed during the present term of this court, the same having been argued and submitted, and by the court taken under advisement, the court is of opinion that a receiver ought to be appointed herein, as prayed for in said application, and Sterling H. Tucker, Esq., of Little Rock, being suggested as a suitable person therefor, and no objections to such appointment being made, it is therefore ordered, adjudged and decreed, that the said Sterling H. Tucker be, and he is hereby, appointed receiver of the fund in this cause, and upon his taking the affidavit prescribed by the statute in such cases provided, and giving bond, with good and sufficient security, and which may be approved either by the judge or

clerk of this court, in term time or in vacation, in the penal sum of twenty-five thousand dollars, in the form and condition prescribed by said statute, and upon such affidavit and bond being filed in the office of the clerk of this court, said receiver shall be deemed qualified as such; and, it appearing to the court that the said James Yell, commissioner to sell the land in controversy, in said original suit, has in his hands an admitted balance of eleven thousand nine hundred dollars and twenty cents, belonging to the said Benjamin Twombly and other beneficiaries thereof, and without any security therefor; it is further ordered, adjudged and decreed, by the court here, that the said commissioner, James Yell, pay over to said receiver, when so qualified, forthwith, the said moneys so in his hands; and that, on said commissioner being served with a duly certified copy of this order, and unless he shall pay over the said moneys to said receiver, within thirty days after being served with such copy, and on his failure so to do, said Benjamin Twombly, or any other of said parties interested in said fund, may have leave, on ten days' notice thereof in writing to the said James Yell, to make application to the judge of this court, in vacation, or to the court in term time, for an attachment against the said James Yell, as for contempt in not obeying such order, unless the said James Yell, upon the hearing of such application, shall show good cause why such attachment should not issue.

"And as to the exceptions of the said Benjamin Twombly, to the report and account filed by said commissioner, it is further ordered that the same be referred to Nathaniel Edwards, Esq., who is hereby appointed master in chancery, for the purpose, with directions to take and state an account of the funds, in this cause, which have come to the hands of said commissioner, upon the papers on file herein, and upon the testimony adduced, and upon the examination of any, or all of said parties, whom he may summon before him for that purpose, at such time or times and place as he may appoint, such testimony and examination to be by him reduced to writing; and ascertain

the amount of said fund which is, or ought to be, in the hands of such commissioner, and make report of the same, together with the evidence aforesaid, to this court, on or before the first day of the next term thereof.

"And it being suggested and shown that, since the last term of this court held, the said Martha R. Ellison, (born Twombly,) hath departed this life, intestate, leaving Ida Ellison, an infant, her only child and heir at law, and that the said Benjamin Twombly hath been, by the probate court of Jefferson county, appointed administrator of the estate of said Martha R., and guardian of the said Ida Ellison; it is further ordered, that this suit of interpleader abate, as to the said Martha R. Ellison, and that said Benjamin Twombly, as such administrator and guardian, and representing these interests, be allowed to prosecute, as complainant herein, and adopting his said supplemental bill, &c.; and it is further ordered, that this cause be continued until the next term of this court."

The record further recites that, at a regular term of the probate court of Jefferson county, &c., the following proceedings were had, to wit:

"January 24, 1868, Sterling H. Tucker, receiver, claimant, *v.* Estate of James Yell. Claim allowed.

"On motion, it is ordered that said claimant be, and he is hereby, allowed against said estate the sum of eleven thousand nine hundred dollars and twenty cents, as per transcript of decree herein filed, and placed in fourth class claims, to be paid accordingly."

Upon the showing in the above record, it is insisted by the appellant that his claim was founded upon a final decree against the deceased, in his life-time, which was a lien, or had the capacity of being a lien, upon his lands, and was properly a third class claim against his estate; that it was approved, and so allowed by the administratrix, filed in the clerk's office of the probate court, and that that court had no authority to change the classification made by the administratrix, accepted by him, and filed for confirmation and recording; and if the

court had such power, it could not so adjudicate as to change the class of the claim from the agreement between the parties, without notice being given to the claimant; that these errors appear upon the record, and therefore *certiorari* was the proper writ, and that the order of classification should have been quashed.

The counsel for the estate of Yell insist that the decree of the chancery court of Arkansas county, was not a final decree; that it was but an order *nisi*, and created no lien against the lands of James Yell, and was not a third class claim; that if it was a final decree, and such as would have been a lien on lands of Yell in Arkansas county, it was no lien on lands in Jefferson county, and there was no showing that Yell owned lands in Arkansas county, and hence there was no lien, and the demand therefore a fourth class claim; that the probate court alone was authorized to class the same, and the presumption is, it was properly done, and, if that court erred, such error should have been corrected on appeal; that claimant had his demand presented in that court for classification, and it was his own laches if he did not prosecute an appeal, if aggrieved, by the action of that court; that the circuit court could not look beyond the face of the record of the probate court, and, with legitimate presumptions in its favor, there was no sufficient error to quash that judgment, and hence the judgment of the circuit court should be affirmed.

Omitting, for the present, the first ground assumed by the demandant, his second is, that the claim had been allowed and classed by the administratrix, and that the probate court had no power to change that classification. *Sec. 111, ch. 4, of Gould's Digest,* provides that "if the executor or administrator is satisfied that a claim, properly verified, is just, he shall indorse thereon his approval and allowance, and *the time* it was exhibited." He is not therein required to class the demand, but he is required to note *the time* the *approval* is made, obviously to make evidence upon which the court can act in determining the class to which the claim belongs.

Section 113, of the same chapter, provides that "the clerk shall present the claims on file with him for classification, and a record shall be kept of the date of filing and the amount and class of the claim;" and, by section 115, "the order of the court, allowing and classing a claim, shall have the force and effect of a judgment."

It is provided by section 112 that "the administrator shall class and keep a list of all demands, and present the same to the court with each annual account current." It is evident to our minds that, by that section, he was only required to keep such list for settlement and distribution.

Section 116 provides that "no claim shall be presented to the probate court for allowance until after the executor shall have refused to allow and class the same; and in all such cases, if the claimant be allowed his claim by the court, he shall be entitled to his costs."

Judge Scott, in the case of *Cossitt v. Biscoe,* 12 *Ark.*, 99, says: "These duties are manifestly but to produce data for the action of the probate court, as to the allowance and classification." We think it does not deprive the court of control over demands. Take our entire administration system together, and it seems quite clear that the probate court is the proper authority to ultimately order the classing and recording of demands. Such orders, when made, have the force and effect of a judgment. *Dooley, et al., v. Watkins,* 5 *Ark.*, 705; *McMorin, administrator, v. Overholt,* 14 *Ark.*, 245; *Cossitt v. Biscoe,* 12 *Ark.*, 98. And certainly an administrator has no power to render a judgment, or to do an act that is equivalent to a judgment, against his intestate's estate. Nor is the probate court compelled to act under his directions. That court is a guard against faithless administrators as well as fraudulent claimants. It is made the duty of the probate court to examine and correct all errors in the accounts of administrators before the same are approved. In some instances minors, or even creditors, have no protection to their property rights only such as is furnished by the court. It should

exercise a general guardianship over all estates being administered. Should an administrator and claimant agree together to class a demand, unjust in itself, or in an improper class, to the injury of distributees or the prejudice of creditors, whose peculiar service or vigilant prosecution of their claims entitles them to a preference, it would be the duty of the court of probate to reject such claim, or place the same in the class assigned it by law, regardless of the administrator's wishes.

The claimant insists, in this case, that he was not before the probate court. We think he was. He set up the demand against the estate; he was the person invoking the consideration of the court between his claim and that of other creditors and distributees of the estate, and had he not seen fit to move in that matter, no such cause would have been in that court. Having made and verified his claim, presented the same and filed it in the clerk's office; having prepared his case for that probate court, (although the clerk is required to lay the claim before the court for classification,) he, by law, was bound to know his demand would be for action before the court, and, if he saw fit to remain absent, the risk was upon himself.

The counsel for the estate is correct in assuming that if any error to the damage of the claimant has intervened in this case, relievable *only by appeal,* he must bear the loss by failing to pursue his remedy in its proper channel, after his institution of proceedings on his demand.

This brings us to the main question in this case: Was the decree of the Arkansas county chancery court *final;* and, if so, was the claim in the third class?

Section 146, chapter 28, Gould's Digest, provides that "if any person shall deem himself aggrieved by any *final decision, order* or *decree,* of any court exercising chancery jurisdiction, and if such person shall pray an appeal to the Supreme Court, during the term at which such decision, order or decree, is made, such appeal shall be granted;" and hence counsel have referred us to various decisions on appeal that, by examination

thereof, we might arrive at a correct conclusion as to the finality of this decree. Many of the definitions of final decree are quite loose and unsatisfactory, resulting mainly from the fact that such definitions were given in view of a specific state of facts then before the court, and not intended as a full exposition of the terms in an abstract sense. An exact definition, applicable to all cases possible to arise in practice, is not easily given.

Mr. Bouvier, in his Law Dictionary, says : "A final decree is that which finally disposes of the whole question, so that nothing further is left to adjudicate upon."

In *Haynie v. McLemore*, 12 *Ark.*, 393, Justice SCOTT says : " A final decree is where nothing remains to be done by the court, between the parties remaining in court."

Mr. Adams, in his Commentaries on the Law, as administered in the court of chancery, says : "A final decree, called a decree on further directions, or on the equity reserved, disposes ultimately of the suit." . *Adam's Eq. Pl.*, 375.

Chief Justice SAVAGE defines a final decree to be " the last decree which is necessary to be entered to give to the parties the full and entire benefit of the judgment of the court." See 7 *Paige Ch. R.*, 19.

In the case of *Crittenden, ex parte,* 10 *Ark.*, 339, Chief Justice JOHNSON says : " A final decree is one that makes an end of the case, and decides the whole matter in controversy, costs and all, leaving nothing further for the court to do."

This last definition, if not some of the others, is clearly too broad in terms, and seems to require a more absolute and complete disposition of all the matters before the court than can legitimately be claimed under our statute. This is made apparent by after decisions of our court, and adjudications of superior courts of other States.

In the case of the *State v. Shall*, admr., et al., 23 *Ark.*, 601, one defendant filed a plea ; the court considered the plea ; held it sufficient, and decreed that the bill be dismissed as to him. This court held that to be a final decree, although the merits

of the case were not affected between others, and no decree
between them was, for three years, rendered. Yet Shall was
finally discharged, because an appeal as to him was not prose-
cuted upon the first decree. 23 *Ark.*, 601. The case of *Nichol
v. Dunn, et al.*, 25 *Ark.*, 129, is equally in point.

In 2 *Daniels' Chy. Pr.*, 1202, it is said : " Although a gene-
ral rule of the court is to make a complete decree upon all the
points connected with the case, it frequently happens that the
parties are so circumstanced that a decision upon all the points
connected with their interests can not be pronounced until some
future period," &c.

Under the Kentucky statute, which is substantially the
same as ours, in the case of *McCown v. Delancy, et al.*, the Su-
preme Court of that State held there was no error in decreeing
against a complaint in favor of some of the defendants and
retaining the cause for further consideration as to another de-
fendant. 2 *Bibb*, 441.

In *Graham, et al., v. Hardin's Executor*, a decree was rendered
foreclosing the equity of redemption in lands, and at a subse-
quent term of the court, in the same case, rendered a decree *in
personam* against the defendant for the amount found due. It
was held, on appeal, no question could be considered as to the
foreclosure, because the first was a final decree, and no appeal
was taken until the judgment was rendered *in personam*. 4
*Dana*, 559. And in *Story v. Hawkins, et al.*, the court decreed,
among other things, a sale of lands, in which decree a right to
change or modify the decree at a subsequent term was reserved,
held to be final as to the sale of the lands, but within the
power of the court, and subject to be changed as to all other
matters, at any subsequent term. 8 *Dana*, 13.

It is shown by such adjudications that in peculiar cases, and
under special circumstances, the court may order or decree as
to certain defendants or specific property, while all the equities
as to other defendants, and important claims as to other pro-
perty, are reserved for further consideration. Yet, as to the par-
ticular matter or party acted on, it may be a final determination.

From a careful examination of our statutes, the above cases, and others of similar import, we are clearly of the opinion that it is not always absolutely required to dispose of the entire merits of a cause, and all the parties before the court, as a necessity to a final decree, upon certain particular conceded or established rights, either in or springing out of the matters before the court.

And, while we hold that correct practice requires a chancery court to reserve the equities arising in the cause, as far as can be without manifest injustice, until the final hearing, and then dispose of the entire cause in one decree; yet we deem it but a question of practice, and if manifest necessity requires such action, and in the course of the proceedings final decrees vital to the interests of the litigants are made, an appeal may be had. A final order dismissing a bill as to one defendant, or directing the sale of certain property, or declaring a party subject to certain burdens, or directing a particular disposition of funds in court, may destroy some of the clearest, vital and most important rights of the complainant, yet there may be other parties and other equities before the court, and the lower court has only exercised its judgment, and the remedy must be by appealing to the superior court. And the argument that other parties can not be stopped in the court below to await appellate action, or the assertion that a final decree is such only as makes an end of the cause, and disposes of the whole matter in controversy, so nothing further is to be done by the court, is no sufficient answer to the law allowing appeals *from any final order* or decree. Courts are ministers of justice. The object of the law is to protect the rights of persons, and we are slow to construe law so as to cut off any important right of a suitor who is using all due diligence in making his defense or prosecuting his demand.

The splitting up of cases, and producing such confusion and difficulty in practice, superior courts will condemn, and inferior courts avoid, as far as practicable; but, in the wide range of equity jurisdiction, subjects or parties may be so brought

before the courts as to require more than one order or decree determining separate specific rights in the same controversy; and, if so, we have found no authority holding such decree erroneous in law.

Yell admitted he had $11,900$\frac{20}{100}$ belonging to the original suitors, for which no security had been given; and it appeared to the court there was danger of that sum being lost to its owners. It was then competent and right for the court to make a final order requiring him to pay the amount to a receiver, in whose hands it could securely await further action of the court, and to enforce such order or decree by execution or attachment; and the fact that the original litigants claimed a larger amount, while Yell denied his liability over the $11,900$\frac{20}{100}$, was no sufficient estoppel in law to compel the court to hazard the loss of so large a sum, until the final settlement of all matters between the parties; and, as to that sum, it was an adjudication between Yell and the owners of the funds, and if not reversed, on appeal, forever binding on him. It was a final decree, in the sense used in our statute.

Upon classification, section 134, chapter 28, Gould's Digest, declares: "All decrees for money shall be a lien on the lands and tenements of the party against whom the decree is entered, to the same extent and under the same limitations as a judgment at law." Section 4, chapter 96, Gould's Digest, provides that: "Judgments and decrees rendered in the circuit courts shall be a lien upon the real estate of the person against whom they are rendered, situate in the county for which the court is held." Section 5, chapter 96, ib., declares: "Liens shall commence on the day of rendition of the judgment, and shall continue for three years, subject to be revived," &c. Section 99, chapter 4, title "Administration," provides that: "All demands against estates of deceased persons shall be divided into the following classes: 1. Funeral expenses; 2. Expenses of the last sickness, including wages of servants, medicine and medical attendance; 3. Judgments rendered against the deceased during his lifetime, and which are liens on the lands of the

deceased, if he died possessed of any, otherwise to be regarded as debts due by contract ; 4. All demands, without regard to quality, which shall be exhibited to the executor or administrator, properly authenticated, within one year after the first granting of letters on the estate," &c.

The language used by the Legislature, in declaring what claims shall come within the third class, is not as explicit as it might have been.   It is quite clear that it was their intention to give some judgments preference over other mere contract debts.   They were evidently disposed to reward the vigilant, and to prefer such as had seen fit to prosecute claims to certain judgment liens, and they did not intend to confine these favors to actual liens ; if so, they would have gone no farther than to have said the judgments against the deceased in. his lifetime, and which were liens on his lands, shall compose the third class claims ; but they say, " if the deceased died possessed of any."   We can only understand from this that they meant such judgments as might have been liens on lands ; that claims thus reduced to judgment are to have the preference, whether the deceased had lands or not.

Was it not to base this privileged class upon the judgment, and not upon the fact as to whether the debtor, at his death, had or had not lands ?   The right to that class was provided for those who would incur the expense and use the diligence to obtain a judgment in those superior courts, and to exclude those whose negligence had suffered their judgment liens to expire, or who had not sued upon their claims, or had gone no farther than to reduce their demands to judgments in an inferior court, such as a corporation or justice of the peace court. The law always aids the man who is energetic and vigilant in the enforcement of his just demands, and his right to the higher class claim depends upon his own efforts, and the extent of aid he has obtained from the courts, and not upon the character and location of the property of the deceased.   It is the capacity of the judgment held, and not the property owned by the deceased, that gives character to the claim ; hence we are

of opinion that the judgment and decree, as made by the Arkansas county chancery court, had the same force and effect in determining the class to which the claimant's demand belonged, as it would had the record shown lands of the deceased in that county.

We know of no requirements of law bringing records or other sufficient information into the probate court, by which it could determine whether or not a deceased at his death was the owner of lands. We find provisions of law by which a widow can sue for dower, and bring before the court a claim upon lands, or, upon a failure of personal assets to pay debts, an administrator may, by petition ·or suit, bring before that court evidence that the deceased owned lands, and ask that the same be sold to pay debts; but if no such proceedings arise, in the course of administration, and the class of claims depended upon the existence or non-existence of actual liens, the probate court would have no information or prescribed means of ascertaining the class of claims based upon circuit court judgments; and when the Legislature provided no such information, and prescribed no mode for obtaining it, we must presume they did not intend that it should be had. On the other construction, that they intended the character of the judgment or decree to determine the class of the claim, all requisite information is provided. If a claimant presents his demand, based upon a judgment, the probate court, by inspection of the claim, can readily see if the same was rendered by a foreign court, by a justice of the peace, or other inferior court, or if by a circuit court; whether, from its date, the party has slept upon his rights until his lien is lost. Thus it is easily seen that, although the probate court knows nothing of the lands of the deceased, it can correctly determine the class of the demand. Finally, we find the facts set up in the petition for *certiorari* such as authorized the issuing of· the writ. Then, does the face of the record of the probate court, in this case, disclose error destructive to the interest of the claimant?

That record shows that the claim presented is based upon a

decree which we have determined was final. The decree was presented to the court as a claim, and having been duly certified, verified and allowed, it offered the requisite and proper evidence to a just classification of the demand; and as it possessed all the characteristics of a judgment, capable of being a lien upon lands, and it appeared upon its face no laches had intervened to bar its just claim of lien, the probate court should have so determined, and classed the same in the third class of demands against the estate. And, as all these facts appear upon the face of the record, *certiorari* was a proper remedy, and the circuit court should have quashed the judgment of the probate court; and, for the error in refusing to do so, its judgment is reversed and this cause remanded, with direction to proceed according to this opinion.

McCLURE, J., dissenting, says:

I am of opinion that the decree, which was the basis of the claim in this case, should have been classed as a third class claim by the probate court, but do not concur in the reasoning or argument presented, in relation to the power of the probate court to classify claims on its own motion.