INDEPENDENT INSURANCE CONSULTANTS, INC. *v.* FIRST STATE BANK OF SPRINGDALE, ARKANSAS

5-6146                                         489 S.W. 2d 757

Opinion delivered January 15, 1973
[Rehearing denied February 19, 1973.]

*Jones & Segers,* for appellant.

*Putman, Davis & Bassett,* for appellee.

CONLEY BYRD, Justice. This litigation arises out of the conduct of Woody H. Tague an employee of appellant, Independent Insurance Consultants, Inc., immediately prior and subsequent to the death of Dale M. O'Brien. It appears that Dale M. O'Brien was the owner of the Dale M. O'Brien Insurance Agency and in that capacity contracted with Woody H. Tague to assist in the writing of the insurance business. After the employment contract was entered into the appellant was formed with O'Brien owning 60% of the stock and Tague the other 40%. Under this arrangement

the insurance was written through the Dale M. O'Brien Insurance Agency but all funds in connection therewith were handled through appellant. The funds were deposited in appellee, First State Bank of Springdale, Arkansas in an account requiring the signatures of both O'Brien and Tague. A day or so before O'Brien's death, Tague wrote a $21,000 check on appellant's account signing both his name and the name of O'Brien and deposited the proceeds into a special account. The Administrator of O'Brien's Estate instituted an action in the chancery court against Tague seeking an injunction to prohibit Tague from writing in his own name the business belonging to the Dale M. O'Brien Insurance Agency and for an accounting. After the action against Tague was transferred to law, appellant intervened seeking to recover the $21,000 which appellee had permitted Tague to withdraw. Appellant thereafter amended its complaint against appellee to allege that appellee had negligently and actively assisted Tague in taking over the business of the Dale M. O'Brien Insurance Agency and that as a result thereof appellant had suffered damages in the amount of $300,000.

After numerous discovery proceedings appellee filed a motion for summary judgment on the $21,000 count for the reason that the funds had been used to discharge debts lawfully owed by appellant. On March 21, 1972, the trial court granted the motion for summary judgment but in so doing dismissed the intervention. Appellant filed its notice of appeal on April 11, 1972, and on April 12th the trial court corrected its order to show only a partial dismissal of the intervention having to do with the $21,000 item and that the other issues were still pending. For reversal appellant raises numerous points including the issue that the trial court lacked jurisdiction to correct its order after the filing of the notice of appeal. We find the latter issue to be without merit—see *Andrews* v. *Lauener*, 229 Ark. 894, 318 S.W. 2d 805 (1958).

We do not reach the merits of the other points argued by appellant for lack of a final order. In *Renner* v. *Progressive Life Insurance Co.*, 191 Ark. 836, 88 S.W. 2d 57 (1935) and *Security Mortgage Co.* v. *Bell*, 175 Ark. 128, 298 S.W. 865 (1927), we pointed out that an order

dismissing a complaint in part and leaving a part which presented a triable issue was not an appealable order.

Appeal dismissed.

GEORGE ROSE SMITH, J. concurs and FOGLEMAN, J. dissents.

GEORGE ROSE SMITH, Justice, concurring. I wholly agree with the majority opinion, but I should like to set out other facts to show why the $21,000 claim against the bank is not a separable issue that can be finally determined without reference to the rest of the litigation.

This is a four-sided lawsuit involving claims and counter-claims asserted by (1) the original plaintiff, O'-Brien's administrator, (2) the original defendant, Tague, who was O'Brien's employee and business associate, (3) the appellant-intervenor, IIC, Inc., in whose name O'Brien deposited O'Brien Insurance Agency funds, and (4) the appellee bank, which was the depository for the bank accounts in issue.

The pleadings comprise more than 300 typewritten pages. In the light of the pleadings filed so far (and there will certainly be more), the litigation requires a comprehensive accounting among the four sets of litigants. Their claims and counterclaims are so interwoven that it is impossible to pluck out one thread without affecting the rest of the fabric. Without going into great detail, here is a summary of the major contentions:

(1) O'Brien's administrator, as plaintiff, originally charged Tague with having wrongfully converted to himself the assets and business of the O'Brien Insurance Agency, including $70,830 in premium earnings.

(2) IIC, Inc., owned 60% by O'Brien and 40% by Tague, asserted that the bank conspired with Tague to destroy IIC's business, causing a loss of $250,000. The bank wrongfully allowed Tague to deposit to his own account more than $90,000 belonging to O'Brien and IIC. The bank wrongfully honored a $21,000 IIC check signed only by Tague, although O'Brien's signature was also required. O'Brien's administrator, the original plaintiff,

adopted all IIC's pleadings and joined in its prayers for relief against the bank.

(3) Tague filed a general denial and by cross-complaint sought judgment against IIC's majority stockholders for conversion of corporate assets.

(4) The bank filed a general denial and sought judgment over against Tague in the amount of any judgment entered against the bank. The bank admitted that the $21,000 check was not properly signed but asserted that the money was used to pay legitimate IIC obligations. The bank listed 13 checks, totaling $26,855.16, drawn by Tague against the IIC account and asked IIC to admit that the expenditures were proper charges against IIC. IIC responded that none of the checks were used to pay legitimate claims.

At that point in the litigation the bank moved for summary judgment upon that part of IIC's intervention which alleged that the $21,000 check had been wrongfully honored. This appeal is from a summary judgment upon that limited issue.

It seems plain that the summary judgment is not a final appealable order, because most of the litigation is still pending in the trial court. As the majority point out, it was settled by the *Renner* case and the *Bell* case that an order dismissing only part of a complaint is not final when other counts remain to be tried. That rule is demonstrably sound, especially as in almost every case the various counts in a complaint are interrelated. It will not do to say that *Renner* and *Bell* are distinguishable as having been decided on demurrer. In both cases the plaintiffs stood on their complaints, which were dismissed in part. In that situation the court's order is ordinarily final. *Davis* v. *Receivers St. L. L. & S. F. R. R.*, 117 Ark. 393, 174 S.W. 1196 (1915); *Melton* v. *St. Louis, I.M. & S. Ry.*, 99 Ark. 433, 139 S.W. 289 (1911). It was not appealable in *Renner* and *Bell* only because other counts remained undisposed of, as in the case at bar.

Furthermore, even if the disposition of a separable cause of action could be regarded an an appealable order, the claim that the bank wrongfully honored a $21,000

check is not separable. It is alleged that the bank conspired with Tague to destroy an insurance business. The disposition of many other checks is involved in the conspiracy; the bank itself lists 13 of them. If the bank can appeal the court's ruling with respect to one of the checks, I see no reason why it cannot take a separate appeal with respect to each one of the 13. These considerations serve simply to emphasize the fact that litigation such as this, involving a comprehensive accounting among several rival litigants, is peculiarly subject to the general rule forbidding piecemeal appeals.

Finally, this claim is not separable for yet another reason. O'Brien's signature was admittedly required upon the check. O'Brien's administrator also seeks judgment against the bank for its action in honoring the check, but the administrator was not involved in the summary judgment and is not a party to this appeal. Consequently, even if we should decide the present appeal on its merits, our decision would be undeniably piecemeal, for the same issues could be brought to us again by O'Brien's administrator after the case has ultimately been tried in the court below upon its merits.

JOHN A. FOGLEMAN, Justice, dissenting. I agree with the policy and reasoning underlying the requirement of Ark. Stat. Ann. § 27-2101 (Supp. 1971) that an order of a trial court be "final" before it is appealable. Nothing could do more to clog the judicial machinery than piecemeal appeals, unless it is the necessity for new trials of entire cases because of trial court errors that could have been corrected upon an appeal such as this. I respectfully submit that the summary judgment in this case is final and appealable.

In order to explain the basis of my position it is necessary that I point out matters in the record in addition to those recited in the majority opinion. In the original complaint, the plaintiff, O'Brien's administrator, asked that Tague be required to account for $70,830 in premiums converted by Tague, although due appellant. The complaint of appellant, as intervenor, adopted the allegations of plaintiff's complaint and also sought to recover from appellee for payment of a $21,000 check on appellant's account in that bank payable to "I. I. C. Special Account"

in spite of the fact that the check did not bear a required signature—that of Dale O'Brien. Appellant contended that the proceeds of the check were deposited to the account entitled 'I.I.C. Special Account" or in other accounts in the name of W. H. Tague or some deviation of that name on which no signature except that of Tague was required for withdrawals, so that the money from appellant was actually credited to Tague, who benefited from the $21,000, and that this would not have been possible without the bank's having permitted the unauthorized withdrawal. Appellee denied that appellant had suffered any damages by reason of its honoring the check on appellant's account. By a subsequent amendment to its complaint, appellant alleged that appellee had allowed Tague to deposit improperly endorsed checks amounting to $90,000 belonging to appellant in accounts of Tague, Tague Insurance Agency, or some like name, and that by so doing appellee assisted Tague in destroying appellant's business and the loss of $250,000. Appellant prayed for judgment against Tague in the sum of $300,000, against appellee "in the sum of $21,000 as originally prayed" and against appellee and Tague jointly and severally in the sum of $340,000. Appellee moved for summary judgment "on that part of the intervenor's complaint which seeks to recover the sum of $21,000 by reason of this third-party defendant's alleged wrongful honoring intervenor's check."

Appellee alleged in its motion that Tague was vice-president of appellant, that it "verily believes and has alleged that the proceeds of the $21,000 check * * * were used solely and exclusively to satisfy and discharge legitimate corporate debts owed by the intervenor," that the current officers of appellant are in a position to testify as to the disposition of the proceeds of the check, and that each testified that Tague was the only person who would have any knowledge as to the disposition of the funds. The motion was founded upon the depositions of these officers of appellant to this effect and upon an affidavit of Tague. The affidavit of Tague stated the following:

That the purpose of transferring said funds was to facilitate payment of outstanding and legitimate debts owed by Independent Insurance Consultants, Inc. inasmuch as the president, Dale O'Brien was

gravely ill in another state and could not co-sign checks on the corporate account.

That all proceeds of the $21,000.00 check which I drew upon the regular corporate account and placed in a special account were used solely and exclusively to pay legitimate and outstanding debts owing by Independent Insurance Consultants, Inc., and said corporation received the sole and complete use and benefit of and from the proceeds of the $21,000.000 check in question.

That none of the proceeds of said $21,000.00 were used for any purpose other than payment of corporate debts owed by Independent Insurance Consultants, Inc.

Appellee filed a cross-complaint against Tague seeking judgment over against Tague for any amount recovered from it by appellant.

I do not consider the cases cited by the majority to be controlling in this case. Those appeals arose from the sustaining of a demurrer. In *Renner* v. *Progressive Life Insurance Company,* 191 Ark. 836, 88 S.W. 2d 57, and *Security Mortgage Company* v. *Bell,* 175 Ark. 128, 298 S.W. 865, the demurrers sustained raised the question that certain parts of the complaints failed to state a cause of action, i.e., admitting all facts pleaded to be true, those parts of the complaint stated no cause of action. In this case, the summary judgment was based, not upon a finding that, as a matter of law, there was no cause of action, but, upon a determination that there was no material question of fact to be resolved because the specific finding that the affidavit of Tague (that the $21,000 went to pay obligations of the intervenor) was not "countered" by appellant. Significantly, in the *Bell* case, we quoted the following language from *Davie* v. *Davie,* 52 Ark. 224, 12 S.W. 558, 20 Am. St. Rep. 170:

The object of the limitation is to present the whole cause here for determination in a single appeal, and thus prevent the unnecessary expense and delay of repeated appeals.

We have had many occasions to define what constitutes a final judgment or decree for purposes of appeal. In *Fox* v. *Pinson,* 177 Ark. 381, 6 S.W. 2d 518, we said that the gist of the authorities reviewed in *Flanagan* v. *Drainage District No. 17,* 176 Ark. 31, 2 S.W. 2d 70, was that a judgment or decree is final which dismisses the party from the court, discharges him from the action or concludes his rights to the subject matter in controversy.

In *Flanagan,* a suit was brought by landowners seeking to cancel two contracts, one between the drainage district and Flanagan for construction of certain improvements, and another between the district and one McGibbon, the manager of a security company, to purchase bonds of the district. They alleged that Flanagan was, in reality, the purchaser of the bonds, and that the two contracts were let privately, at one and the same time, for an exorbitant price without competition, and that they were actually one contract. Flanagan and McGibbon denied the allegations of fraud and irregularity and cross-complained against the district to enjoin the annulment of the contracts and later amended their cross-complaint by alleging that the district had abrogated Flanagan's contract and repudiated McGibbon's. Both Flanagan and McGibbon sought to recover their anticipated net profits. The chancellor rendered a decree finding the Flanagan contract valid but holding that it had been properly rescinded by the district on account of legal impossibility of performance, subject to liability for reimbursement of the contractor for expense incurred by him in preparing to perform the contract, the contract price for work done under the contract and damages sustained in connection with performance of the contract, but not to include any anticipated profits on materials not furnished or work not done. The amount of recovery was to be later determined by a master appointed by the court. The question of liability between the parties on the contract for purchase of the bonds was reserved for later decision. After considering exceptions to the master's report, the chancery court entered a decree dismissing the complaint of the plaintiffs, fixing the amount of the recovery on the construction contract and dismissing the cross-complaint for anticipated profits. Flanagan contended on appeal that he was entitled to anticipated profits, but appellee contended that his appeal on this issue was barred because

not taken from the first decree within the time prescribed by law. This court sustained appellee's contention and held that the first decree containing a finding that Flanagan was not entitled to recover anticipated profits was final and appealable, even though it did not include any formal dismissal of the cross-complaint with reference thereto. We held that the rights of the parties to the subject matter were thereby concluded on this issue, pointing out that the decision was not on demurrer. This case is much more nearly parallel to *Flanagan* than to the cases cited in the majority opinion.

In *Flanagan,* we incorporated the language of many previous cases. Among these quotations were:

In peculiar cases, this court may decree as to certain defendants or property, while all the equities as to other defendants and property are reserved for further consideration; and yet this decree, as to certain defendants or property, may be final. If, in the course of the proceedings, final decrees vital to the interests of any of the litigants are made, an appeal may be had. *Tucker* v. *Yell,* 25 Ark. 420 (Syllabus).

The appeal is allowed * * * also where a distinct and severable branch of the cause is finally determined, although the suit is not ended. *Davie* v. *Davie,* 52 Ark. 224, 12 S.W. 558. [1]

The following language used in *Flanagan* is appropriate here:

In other words, the court found that the appellants could never recover from the district any damages by way of anticipated profits, and entered a decree so holding. A reading of the whole decree will show that it was a final disposition of that issue. Nothing whatever was left to be determined concerning such issue. On the contrary, the court, by expressly reserving other issues, and giving the master specific directions to take proof and make his report at a future term of the court with reference to the sole and only

[1] This case was cited in *Security Mortgage Company* v. *Bell,* supra, relied upon by the majority.

issue submitted to him as designated in the decree of September 4, 1923, completely, without reservation, and finally, disposed of the issue of anticipated profits for alleged breach of the contract for the construction of No. 48. After entering the decree in this form, it was wholly immaterial that the court did not have the decree recite that the complaint of the appellants on the issue of anticipated profits was dismissed.

* * * the decree as actually rendered was tantamount to a dismissal of appellants' cross-complaint on the issue of anticipated profits, and as completely and effectually disposed of it as if there had been a formal recital in the decree dismissing the cross-complaint for want of equity, because all parties were forever restrained from carrying out the contract for construction of No. 48; and it was decided that the appellants were not entitled to damages by way of anticipated profits, because the district would not allow the appellants to complete the construction of No. 48 under the contract. The issue, therefore, as to anticipated profits for this alleged breach of contract, was finally disposed of by the decree of 1923.

In *Tucker* v. *Yell*, 25 Ark. 420, we had rejected as overbroad the doctrine followed in the majority opinion, i.e., that, in order to be final, a decree must bring the case to an end, decide the whole matter in controversy and leave nothing further for the court to do. Quoting from that opinion we said:

It is shown by such adjudications that in peculiar cases, and under special circumstances, the court may order or decree as to certain defendants or specific property, while all the equities as to other defendants, and important claims as to other property, are reserved for further consideration. Yet, as to the particular matter or party acted on, it may be a final determination.

From a careful examination of our statutes, the above cases, and others of similar import, we are clearly of the opinion that it is not always absolutely required to dispose of the entire merits of a cause, and all the

parties before the court, as a necessity to a final decree, upon certain particular conceded or established rights, either in or springing out of the matters before the court.

And, while we hold that correct practice requires a chancery court to reserve the equities arising in the cause, as far as can be without manifest injustice, until the final hearing, and then dispose of the entire cause in one decree; yet we deem it but a question of practice, and if manifest necessity requires such action, and in the course of the proceedings final decrees vital to the interests of the litigants are made, an appeal may be had. A final order dismissing a bill as to one defendant, or directing the sale of certain property, or declaring a party subject to certain burdens, or directing a particular disposition of funds in court, may destroy some of the clearest, vital and most important rights of the complainant, yet there may be other parties and other equities before the court, and the lower court has only exercised its judgment, and the remedy must be by appealing to the superior court. And the argument that parties can not be stopped in the court below to await appellate action, or the assertion that a final decree is such only as makes an end of the cause, and disposes of the whole matter in controversy, so nothing further is to be done by the court, is no sufficient answer to the law allowing appeals *from any final order* or decree. Courts are ministers of justice. The object of the law is to protect the rights of persons, and we are slow to construe law so as to cut off any important right of a suitor who is using all due diligence in making his defense or prosecuting his demand.

In *City of Batesville* v. *Ball*, 100 Ark. 496, 140 S.W. 712, Ann. Cas. 1913C 1317, we said:

When a lower court renders a final judgment upon which an execution may issue, or one dismissing the cause or the appeal, it thereby puts it out of the power of such court making the order after the expiration of the term to place the parties in their former condition, and thereby divests them of their

rights, and such judgment or order is therefore final, and an appeal can be taken therefrom.

So far as I can ascertain, we have not departed from the rules treated so thoroughly in these cases. We have uniformly recognized that an order or judgment finally determining a distinct and severable branch of a case, or which operates to divest some right of a party so as to put it beyond the power of the court making the order to place the parties in their former condition after the expiration of the term, is appealable. *Wright* v. *City of Little Rock,* 245 Ark. 355, 432 S.W. 2d 488; *Allred* v. *National Old Line Ins. Company,* 245 Ark. 893, 435 S.W. 2d 104; *Johnson* v. *Johnson,* 243 Ark. 656, 421 S.W. 2d 605; *Parker* v. *Murry,* 221 Ark. 554, 254 S.W. 2d 468.

I submit that the order on motion for summary judgment qualified as appealable on both its termination of a distinct and severable branch of the case, i.e., the cause of action on the $21,000 check, and its operation to put it beyond the power of the court to place the parties in their former condition after the expiration of the term.

It would be deplorable if we reached a result which prevented a party from ever having a review in a case such as this, or which, at best, left the parties uncertain as to the proper time for review. Yet, if we follow the rule of the majority opinion upon the authority of the *Renner* and *Bell* cases, appellant has no right of review now. After trial of the causes of action now pending, particularly if appellant is successful, under the rules hereinabove set out, it could be said that the time for appeal had expired because the rights of the parties were concluded on this severable branch of the case by the summary judgment. We should not leave the law in such an uncertain state. If *Renner* and *Bell* are in conflict with the cases cited in this opinion, then these two cases should be overruled.

Of course, appellant's claim for $21,000 because its deposit was paid out upon an unauthorized check was in and of itself a separate cause of action, and was so treated by the parties in their pleadings and by the court in its judgment.

If we reach the questions raised by appellant (and we should), it seems to me that we cannot reach any conclusion except that the judgment was improper. Appellant asserts, and I agree, that the circuit court erroneously put the burden of proving the extent of its loss or damage resulting from the payment of the $21,000 upon an unauthorized signature upon the check on the account for that amount. That burden was upon the bank in this case. In a case where it was alleged that payment from an account was made upon an unauthorized signature, this court took the position that a bank is held to strict accountability to pay out funds in strict compliance with those terms and conditions, and that the burden to show that this was done was upon the bank, in spite of the contention that the "strict accountability" portion of the jury instruction approved inferred that the claimant did not have to prove that he was damaged, but that the bank was strictly accountable for the amounts paid out on an unauthorized signature. *First National Bank of Springdale* v. *Hobbs*, 248 Ark. 76, 450 S.W. 2d 298. Although I dissented in that case, I consider that this decision settled the matter and that the bank in this case is held to "strict accountability" and had the burden of proof on the question, i.e., whether the money taken from appellant's account actually went to pay obligations of appellant, so that no damage to appellant resulted from the bank's unauthorized act.[2]

The burden of proof is important in determining the extent to which appellee was required to controvert the conclusions stated by Tague in the affidavit supporting the motion for summary judgment. In considering whether the supporting affidavits demonstrate that there is no genuine material fact issue so that the moving party is entitled to judgment as a matter of law, the testimony submitted with the motion must be treated in the same way it would be if the moving party had moved for a directed verdict, and viewed in the light most favorable

---

[2]Appellant also cites persuasive extrastate authorities supporting its argument on the burden of proof. *Fargo National Bank* v. *Massey-Ferguson, Inc.*, 400 F. 2d 223 (8th Cir. 1968); *Movie Films, Inc.* v. *First Security Bank of Utah, N. A.*, 22 Utah 2d 1, 447 P. 2d 38 (1968); *First National Bank of Melbourne* v. *Sogaard & Debo, Inc.*, 406 F. 2d 1128 (5th Cir. 1969). These cases simply state that the burden of proving the affirmative defense that the money improperly paid went to the benefit of the depositor is upon the bank.

to the party resisting the motion with all doubts and inferences resolved against the moving party. *Jones* v. *Halliburton Company*, 240 Ark. 919, 403 S.W. 2d 51; *Russell* v. *Rogers*, 236 Ark. 713, 368 S.W. 2d 89. The burden of establishing entitlement to a summary judgment lies upon the moving party. *Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W. 2d 543; *Deltic Farm & Timber Company* v. *Manning*, 239 Ark. 264, 389 S.W. 2d 435. Every doubt is resolved against the granting of a summary judgment, and if there is any doubt whatever the judgment should be denied. *Bull* v. *Manning*, 245 Ark. 552, 433 S.W. 2d 145; *Deam* v. *O. L. Puryear & Sons, Inc.*, 244 Ark. 18, 423 S.W. 2d 554; *Wirges* v. *Hawkins*, 238 Ark. 100, 378 S.W. 2d 646; *Russell* v. *City of Rogers*, supra. Unless the moving party has clearly met its burden of demonstrating that there are no justiciable issues, the failure of the opposing party to offer controverting affidavits is immaterial. *Hervey* v. *AMF Beaird, Inc.*, 250 Ark. 147, 464 S.W. 2d 557. In determining whether a summary judgment should be granted, the court may not weigh the testimony. *Beam* v. *John Deere Company of St. Louis*, 240 Ark. 107, 398 S.W. 2d 218. Such a judgment should be entered only if the proof presents no issue for the jury. *Bergetz* v. *Repka*, 244 Ark. 60, 424 S.W. 2d 367. In short, the summary judgment procedure was not devised as a vehicle for bypassing jury trials in which the credibility of witnesses and the weight to be given their testimony is properly determined. See *Poller* v. *Columbia Broadcasting System*, 368 U.S. 464, 82 S. Ct. 486, 7 L. Ed. 2d 458 (1962); *Dulansky* v. *Iowa-Illinois Gas & Electric Company*, 191 F. 2d 881 (8th Cir. 1951).

I submit that there was a question for jury determination. Appellee bore the burden of proving that the money extracted from appellant's bank account was expended for appellant's benefit. It attempted to meet that burden by the testimony of Tague, against whom appellee sought judgment over for the amount of any recovery by appellant. Tague, then, was an interested party, and his testimony could not have been taken as uncontroverted or uncontradicted, on a motion for a directed verdict. *Cousins* v. *Cooper*, 232 Ark. 605, 339 S.W. 2d 316; *Skillern* v. *Baker*, 82 Ark. 86, 100 S.W. 2d 764, 118 Am. St. R. 52. The reason is that the credibility of the interested witness is a matter

for jury determination. The rule was perhaps better stated in dictum in *Gish* v. *Scantland*, 151 Ark. 594, 237 S.W. 98, as follows:

> * * * we have several times held that the testimony of a litigant, although not contradicted by any other witness, does not make a case of undisputed testimony, upon which the court may direct a verdict, upon the theory that the facts of the case are not in dispute. This is true for the reason that the interest of the litigant in the subject-matter of the litigation makes a question for the jury whether the testimony is true, as it is a circumstance from which an inference may be drawn unfavorable to his testimony or against the facts testified to by him.

The same reason exists for denial of a summary judgment upon the uncontroverted affidavit of an interested party.

Summary disposition should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. *Sartor* v. *Arkansas Natural Gas Corporation*, 321 U.S. 620, 64 S. Ct. 724, 88 L. Ed. 967 (1944). Before such a judgment is granted, it should be quite clear what the truth is. *Poller* v. *Columbia Broadcasting System*, supra; *Wilson* v. *Gas Service Company*, 10 F.R.D. 428 (D. C. Mo. 1950); *Sartor* v. *Arkansas Natural Gas Corporation*, supra. When credibility of the supporting evidence is involved, a summary judgment should be denied when a directed verdict would be improper. If it appears from the record that there is any genuine issue of fact, even though it may relate only to weight and credibility of testimony, the court may not enter summary judgment. *Boro Hall Corporation* v. *General Motors Corporation*, 164 F. 2d 770 (2nd Cir. 1947); *Newark Evening News Publishing Company* v. *King Features Syndicate*, 7 F.R.D. 645 (D.C.N.J. 1948). The mere fact that the witness is interested in the result of the suit is sufficient to require his credibility to be submitted to a jury. *Sartor* v. *Arkansas Natural Gas Corporation*, supra. See also, *Dulansky* v. *Iowa-Illinois Gas & Electric Company*, supra; *Block* v. *Biddle*, 36 F.R.D. 426 (D.C. Pa. 1965). The party having the burden of proof must not only offer evidence to support his allegations,

he must persuade the jury to return a verdict based upon the credibility of such evidence, even though no evidence is offered by the adverse party. *Wilson* v. *Gas Service Company,* 10 F.R.D. 428 (D.C. Mo. 1950). Failure to support the bare allegations of the pleadings of the resisting party with specific evidentiary data will not justify summary judgment for the moving party where the questions of fact in dispute turn exclusively upon the credibility of movant's witnesses. *Cross* v. *United States,* 336 F. 2d 431 (2d Cir. 1964). In *Loudermilk* v. *Fidelity & Casualty Company of New York,* 199 F. 2d 561 (5th Cir. 1952), it was held that a summary judgment was improper and that a jury whose business it is not only to hear what men say but to search for and find the roots from which the sayings spring should be afforded full opportunity to determine the truth and integrity of the case. The court said that even though the circumstances almost, if not quite, showed the critical point as a matter of law, a jury would not be bound to accept the testimony of the interested parties on the point, but could reject it, particularly their conclusions as to the effect of their acts.

Furthermore, summary judgment should be denied when there are conflicts in affidavits of a party which themselves present questions bearing upon credibility. See *Peckham* v. *Ronrico Corporation,* 171 F. 2d 653 (1st Cir. 1948). Appellant has pointed out that in a discovery deposition taken long before his affidavit was made, Tague stated that a $3,500 check dated April 14, 1969, drawn on the account in which he deposited the $21,000 check would have been an obligation of appellant, "unless it's under the W. H. Tague Insurance Agency." In that deposition Tague also stated that checks on the account payable to himself and four others were for salaries, "not for the Dale O'Brien Agency or Independent Insurance Consultants, Inc. It would be for W. H. Tague." It is true that Tague, in each instance upon further examination by appellee's attorney, stated that the *proceeds* of the checks were used for payment of obligations of appellant, but these apparent inconsistencies and contradictions themselves present a question of credibility for jury resolution.

For the reasons stated, I would reverse the summary judgment.